# Citizens Passenger Railway Co. *v.* Public Service Commission et al.

*Statutes—Construction—Subject-matter—Same expression.*

1. The meaning of a clause in an act of assembly must be ascertained, if possible, from the act itself, and especially by a consideration of all the paragraphs in which the same expression appears, and directly connected with the subject-matter thereof.

*Appeals—Interlocutory order—Public service companies—Rates —When appeal may be taken and when quashed—Superior Court— Acts of July 26, 1913, P. L. 1374; June 3, 1915, P. L. 779, and July 11, 1917, P. L. 806, 810.*

2. Unless expressly allowed by statute, appeals from interlocutory orders will not be considered.

3. An appeal from an order of the Public Service Commission in a rate case, should be quashed, unless the order appealed from dismisses the complaint or directs the public service company to satisfy it in whole or in part.

4. An appeal may be taken from such an order, if it establishes, changes, alters or in any manner affects the prices, rates, joint rates, tolls or charges of a public service company, although directed to be in force only temporarily.

5. In a proper case, injunctive relief may be granted under article VI, section 31, of the Public Service Company Law, by modifying, staying or annulling any order of the commission or of a commissioner, even though it does not dismiss the complaint or direct its satisfaction, in whole or in part, if, for jurisdictional reasons affecting the parties or the subject-matter, the order should not have been made.

6. An appeal may be allowed from a decree of the Superior Court finally dismissing complaints filed against the rates of a utility company.

*Public service companies—Public Service Commission—Rates—Jurisdiction—Joining several companies—Rentals—Lease.*

7. The Public Service Company Law covers only such matters as are expressly or by necessary implication included within its terms.

8. So far as concerns rates, service and facilities, the Public Service Commission is limited to the review of actions by operating companies.

9. Except in the case of joint rates, complaints against two or more utility companies cannot be joined in one complaint.

10. No contract by a utility company can properly be subjected to a direct attack and revision, unless it is a rate contract; nor indirectly unless it has some relation to one or more of the elements to be considered in determining what is a proper rate.

11. Rentals payable by an operating company to a nonoperating company, in consideration of a lease of the franchises and assets of the latter, are not elements to be considered in fixing the rates of the operating company, and are not subject to revision by the Public Service Commission.

12. Neither the commission nor the public have any concern with the disposition made by a utility company of the rates which it is authorized to collect.

*Public Service Commission—Practice—Motion to dismiss—Demurrer—Jurisdiction—Injunction.*

13. A motion to dismiss and not a demurrer is the proper method of objecting to a complaint filed with the Public Service Commission.

14. A refusal to dismiss will not affect the question of jurisdiction, if later an application is made for an injunction under article VI, section 31, of the act.

Argued April 18, 1921.   Appeal, No. 315, Jan. T., 1921, by the City of Philadelphia, from judgment of Superior Court, Oct. T., 1920, No. 273, reversing order of Public Service Commission, Complaint Docket No. 3026, in case of Citizens Passenger Railway Co. et al. v. Public Service Commission et al., and the City of Philadelphia intervening.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ.   Reversed.

Appeal from the Superior Court.   See 75 Pa. Superior Ct. 238.

The opinion of the Supreme Court states the facts.

The Superior Court reversed the order of the Public Service Commission.   The City of Philadelphia appealed.

*Error assigned,* among others, was the judgment of the Superior Court, quoting it.

*C. Oscar Beasley* and *W. A. Magee,* for United Business Men's Association, appellant.—The orders of the Public Service Commission were not appealable to the Superior Court: Breitweiser Co. v. Scott, 33 Pa. Superior Ct. 627; Cherry Township v. Sullivan Co., 30 Pa. Superior Ct. 502; Germantown Trust Co. v. Powell, 260 Pa. 181; B. & O. R. R. v. U. S. ex rel. Pitcairn Coal Co., 215 U. S. 481; Vanderslott v. Pa. W. & P. Co., 259 Pa. 99; McCullough v. Ry. Mail Assn., 225 Pa. 118.

*Samuel Rosenbaum,* with him *Joseph G. Magee, Ernest Lowengrund,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for City of Philadelphia, appellant.—The position of the city is that no orders have

ever been made by the Public Service Commission in these cases, the commission having so far done no more than to give the companies a notice to answer as required by the Public Service Company Law.

The order of the Superior Court is a final judgment concluding the commission from taking further proceedings and is therefore appealable to the Supreme Court under section 30 of article VI of the Public Service Company Law.

The companies are public service companies and doing business within the meaning of the act.

The public service they are rendering is the continued owning of the property devoted to public use.

They may not collect for this service more than a reasonable return, and the commission has power to limit it.

The present case is founded upon complaints amply sufficient to invoke the commission's powers.

Having the power the commission merely acted in compliance with the law in giving the companies notice to make answer to the complaints: Leiper v. R. R. Co., 262 Pa. 328; Turtle Creek Borough v. Water Co., 243 Pa. 415; Bellevue Borough v. Water Co., 245 Pa. 114; V. & S. Bottle Co. v. Gas Co., 261 Pa. 523; Klein-Logan Co. v. Duquesne Light Co., 261 Pa. 526; Schaper v. Ry., 265 Pa. 109.

*Berne H. Evans,* with him *John Fox Weiss* and *Frank M. Hunter,* for the Public Service Commission of Pennsylvania.

*Owen J. Roberts,* with him *Dimner Beeber, Henry P. Brown, Joseph J. Brown, Ralph B. Evans, Joseph Gilfillan, Edward Hopkinson, Jr., Joshua R. Morgan, Saul, Ewing, Remick & Saul, John J. Sullivan* and *David Wallerstein,* for appellees.—The orders of the Public Service Commission here in question were of a character appealable to the Superior Court: Franke v. Johnstown

F. S. Co., 70 Pa. Superior Ct. 446; Fayette Co. Gas Co. v. Pub. Serv. Com., 70 Pa. Superior Ct. 472; McCullough v. Ry. Mail Assn., 225 Pa. 118; Vanderslott v. Pa. W. & P. Co., 259 Pa. 99; Bird v. Sleppy, 265 Pa. 295.

If of a character appealable to the Superior Court the orders of the tribunal, here attacked, are of a character appealable to the Supreme Court.

The Public Service Commission had not the power to require the underlying or owner companies to make answer to the complaint and go to hearing upon the complaint and answer.

The respondents furnish no service to the public and are therefore not within the power of the commission with respect to the regulation of rates.

The power of the commission over leases is defined by the act and does not include the power to revise leases made prior to the act.

The rentals in this case are not synonymous with rates or compensation as used in the act.

OPINION BY MR. JUSTICE SIMPSON, July 1, 1921:

Originally there were a number of street passenger railway companies in the City of Philadelphia, operating under separate charters, and each limited to a specific route of travel. Believing that combination would be more profitable, favorable legislation was obtained, one road would lease others, and those owned and leased would be run as a single system. Ultimately many of them were leased by the Philadelphia Traction Company, which, with its leased lines and those still operating under their original charters, were later leased by the Union Traction Company; and it, in turn, with all its leased lines, was leased by the Philadelphia Rapid Transit Company, which is now the sole operating company in the city. This latter lease is the only one to which the last-named company is a party; but thereby, as by all the other leases, it was provided that the lessee company should carry out the terms and conditions of

the preceding leases, for which its lessors were responsible. Those contracts provided for specified rentals, to be paid by the lessee to the lessor, sufficient to cover the fixed charges of the latter and a stated dividend to its stockholders; and, since the leases included the franchises of the original companies, the latter were denuded of everything except their mere corporate existence. All this occurred long before the Public Service Company Law of July 26, 1913, P. L. 1374, went into effect; and those contracts, of course, are of binding force, according to their terms, unless the State constitutionally can interfere and actually has interfered therewith on behalf of the public.

On the theory that the State has legally acted by the Public Service Company Law, the Cliveden Improvement Association, a voluntary organization of citizens of the City of Philadelphia, filed with the Public Service Commission a complaint against the Philadelphia Rapid Transit Company alone, which referred, however, to the leases of the underlying companies, and prayed "a separate valuation of the property and facilities controlled by the [Philadelphia Rapid Transit] company wherein the value of the property and facilities represented by each lease...... [shall be] determined as a unit separate and apart from all the other property and facilities controlled by the company." An answer and a replication were duly filed, but since none of these proceedings have any relation, other than historical, to this appeal, they will not be considered further.

The United Business Men's Association of Philadelphia, and George J. Campbell, a taxpayer of the city, later applied for and, being given leave to intervene in the controversy thus begun, also filed a complaint (in which W. A. Dunlap, as a taxpayer, was substituted for George J. Campbell), against seventeen of the original passenger railway companies,—but not joining the Philadelphia Rapid Transit Company as a defendant,— alleging that respondents therein still have the duty but

have ceased to furnish to the public adequate service and facilities at reasonable rates, that they were receiving a grossly excessive return for the property which they had originally owned, but which was now used by the Philadelphia Rapid Transit Company, and prayed the commission to inquire into the fairness of the leases, to value the property of these respondents, to determine what would be a fair compensation therefor, and to reduce to such a reasonable basis the rentals the underlying companies should thereafter receive from the Philadelphia Rapid Transit Company, in order that the latter would be able to "furnish service and facilities to the public such as would be in accordance with the standards of the commission and the needs of the people." Still later, the United Business Men's Association of Philadelphia and the said George J. Campbell, filed another intervening complaint (which it afterwards amended) against all of the underlying companies,—but not the Philadelphia Rapid Transit Company,—enlarging and slightly changing, though not substantially altering, the original intervening complaint and prayer thereof, save that, as stated, it brought in more defendants, and also definitely averred the Philadelphia Rapid Transit Company had no charter rights to operate cars on any street of the city, but is running them "solely as agent or lessee of the respondent underlying companies; and that said underlying companies cannot escape their duty to the public or exact from the public unreasonable compensation, and place themselves beyond the reach of the public laws by merely making contracts between themselves and the holding companies."

To these intervening complaints, certain of the respondents filed answers, not material to be here considered, but each of twenty-two of them separately demurred, alleging certain objections, the vital one being that the "complaint and amended complaint.....do not state a cause of action within the cognizance of the commission." The commission overruled the demurrer, di-

rected each demurrant "to file answers to the complaint within ten days from the date of the service of this order, and......that a time for hearing upon the complaints and answers be fixed in September, when the commission will proceed to hear, investigate and duly consider all matters put in issue by the complaint and answers." Thereupon the twenty-two demurrants prosecuted separate appeals to the Superior Court, upon the hearing of which the City of Philadelphia was given leave to intervene and defend, and it and the original complainants moved to quash the appeals on the ground that the order complained of was not the subject of an appeal. The Superior Court overruled the motions to quash, sustained the demurrers and reversed the orders of the commission, so far as related to each of the appellants here. Upon application by the City of Philadelphia, the United Business Men's Association and George J. Campbell, and the Public Service Commission, we allowed each of them to appeal to this court, so far as related to twenty-one of the decrees entered by the Superior Court, with the result that we have to consider sixty-three appeals, including the present one, the arguments here being limited by us to the three questions hereinafter stated, the first one of which is: "Were the orders of the Public Service Commission, here in question, of a character appealable to the Superior Court?"

This question we answered in the negative, in Peoples Natural Gas Co. v. Public Service Commission et al., 268 Pa. 235; but, since the brief opinion there rendered seems to have been misunderstood, we will here set forth at length our reasons for this conclusion, which depend, of course, on the correct interpretation and coördination of article VI, section 17, of the Public Service Company Law (as amended by the Act of June 3, 1915, P. L. 779, 781), and section 31 of the same article; by the former of which an appeal is allowed to the Superior Court "within thirty days after the filing of any finding or determination by the commission," and by the latter it is

recognized that the Court of Common Pleas of Dauphin County, in a proper case, may issue an "injunction......
modifying, suspending, staying or annulling any order of the commission, or of a commissioner."

It was strongly urged by appellees that the word "any" in section 17 above, must be given the meaning of "each" or "every"; but this does not assist in determining the question at issue, which is: What "finding or determination by the commission" did the legislature refer to, when it allowed an appeal from "any" thereof? In answering this, but little aid is received by considering what has been decided regarding the meaning of these words in other statutes, for here we have a complete and exclusive system in and of itself. Everybody admits the legislature could not have intended, by this section, to give an appeal from every order of the commission, no matter how unimportant (as, for instance, from an order adjourning a hearing until the next day); and hence the courts must either give to the words "any finding or determination" a purely arbitrary meaning, entirely aside from a consideration of the act itself (which would be judicial legislation and not judicial construction, and hence never to be tolerated unless no other course is open), or we must seek in the act the meaning intended, and this, of course, is the correct method (Long v. Cheltenham Township School District, 269 Pa. 472, 475) since we are to find and apply what the legislature meant when it passed this particular statute. Happily, an investigation along this line makes the intent clear, and decides the point in accordance with the general policy of our law, which forbids appeals from interlocutory orders, unless they are expressly provided for by statute. That the order appealed from (which only required an answer and arranged for fixing a time for a hearing later) is interlocutory, and would not ordinarily be the subject of an appeal, every one must concede: Arnold v. Russell Car & Snow Plough Co., 212 Pa. 303.

Turning then to the act itself, we find sections 6 to 17 of article VI, provide for complaints, because of violations of any requirement of the act or of "any lawful determination, ruling or order of the commission"; for hearings and rehearings thereof; for decisions of the commission in regard thereto; for the making and filing of record of "a written finding, determination or order, either dismissing the complaint, or directing the public service company to satisfy" it in whole or in part; for the rescinding or modifying of such "finding, determination or order"; for service thereof upon the utility company; and, by section 17, for an appeal "within thirty days after the filing of any [such] finding or determination." These sections furnish a complete and continuous system, leading up to the appeal section, and clearly point out the cases in which an appeal is allowed, viz, from a "finding or determination dismissing the complaint or directing the public service company or companies complained against to satisfy the cause of complaint, in whole or to such extent and within such time as the commission may specify, require and order." To reach any other conclusion, we would have to wrest section 17 from its connection with the other sections referred to, and treat it as if it were a separate statute, and not merely an integral part of a system logically and consistently developed, resulting in a right of appeal, when rates are under consideration, only when those being collected are in some way affected by an order of the commission.

Reviewing some of these sections more specifically, we find section 6 provides for complaints regarding "anything done or about to be done, omitted or about to be omitted, by any public service company, in violation of ......any lawful determination, ruling, or order of the commission," and that the company "must satisfy the complaint, or answer the same in writing." Section 9 provides that, if complaint is made, "as aforesaid, of any violation of any lawful determination, ruling, or order of

the commission," and reasonable grounds appear therefor, a hearing shall be had and "the burden of proof shall be upon the public service company.....to show that the determination, ruling or order of the commission has been complied with." Section 10 provides that "Wherever the commission shall investigate any matters complained of......it shall be its duty to make and file of record a written finding, determination, or order, either dismissing the complaint or directing the public service company......to satisfy the cause of complaint, in whole or to such extent and within such time as the commission may specify, require and order." The clauses "dismissing the complaint," and satisfying "the cause of complaint" in a rate case, such as this is, of course both refer to some action by the commission determining what the utility company must do in the matter of its collection of rates. The "written finding, determination or order" which these two sections specify shall be filed of record, clearly must be the one from which an appeal may be taken under section 17, "within thirty days after the filing of any finding or determination by the commission." Without going into further detail, it may be said that the balance of this section, which provides that the appeal shall be accompanied by an affidavit that "injustice has been done" by the ruling, determination or order from which the appeal is taken (not "may be done" if some time in the future an order is made as to the rates to be charged), as well as the other sections of the act, all point to the conclusion that the "finding or determination," which may be appealed from, is the "finding or determination," referred to in the preceding sections, and make certain that the act was drafted in conformity with, and not as an exception to, the policy of the law above referred to, and hence, in rate cases, excludes appeals from purely interlocutory orders of the commission, not affecting the rates being charged, just as they are held barred, in other proceedings, unless statutorily allowed. This does not mean that no appeal

can be taken from an order fixing rates, or from an order in part satisfying a complaint as to rates, simply because it is not a final order ending the proceedings. An appeal will lie from such an order, though it is only to be temporarily in force, for it thus directs a partial satisfaction of the complaint to the "extent and within such time as the commission shall specify"; and is, therefore, covered by article VI, section 19, which refers to an "appeal by a public service company from an order of the commission establishing, changing, or altering, or in any manner affecting, the prices, rates, joint rates, tolls, or charges for any service." The order here appealed from does not, however, affect the rates being charged; and hence, assuming the commission had jurisdiction of the person and subject of inquiry, it would designate a matter of procedure only, not the subject of an appeal, whereas if the commission lacked jurisdiction in other respects, it would have to be treated otherwise, as will be shown later.

Any other conclusion than as above stated, would lead to startling results, and might render useless the whole purpose of the act. If, literally, "any finding or determination by the commission" can be followed by an appeal, as, unless limited in the way herein stated, it may be (since no other limitation has been or can be found in the statute), the whole system may be made farcical by those who desire to destroy it, and no relief could be had against such action. Instead of the commission directing its own course of procedure, it could only do so subject to an appeal to the Superior Court, following "any finding or determination" by the commission. Every "finding, determination or order," however unimportant, would have to remain unacted upon for fifteen days, because, under article VI, section 14, a rehearing thereof may be applied for within that time. After this was disposed of, the matter would have to remain in abeyance thirty days longer in order to ascertain, under section 17 of the same article, whether an appeal would be taken,

and, under sections 18 and 21 thereof, an additional thirty days, after notice of the appeal, for certification of the record and an answer by the commission. The appeal would then have to be decided by the Superior Court, after the usual delays for preparation of paperbooks, fixing a time for hearing, argument and decision. It would then go back to the commission, with the same course possible after the next unimportant "finding or determination," and so after every succeeding one, to each of which also there might be a petition for rehearing, appeal to the Superior Court, etc., etc., all of them together resulting in delaying the proceedings for an indefinite period of time. It is impossible of belief that the legislature intended to give the Superior Court either the power or duty thus to direct the commission in purely procedural matters (over which, by article V, section 26, the commission itself is given full authority), or to make it possible to have delays which would effectually destroy one of the most important reasons for the passage of the act. Yet these conclusions are inevitable, unless the one reached in this opinion is adopted.

It is no answer to say that this order, if within the commission's jurisdiction, involves a valuation and will entail an unnecessary expense, if it ultimately appears the contention of the utility company must be sustained; not only because this is a legislative and not a judicial matter and a like situation may exist in every rate case, but also because the same thing might be said of every order, however trivial, the difference being, at most, one of degree and not in kind, a difference which the law does not consider, unless it is expressly so provided by statute: Easton Transit Company's Petition, 270 Pa. 136. Besides, this complaint might be made by any respondent in any litigated proceeding; it is inherent in our system of government by law; and many a successful defendant, in a hard-fought equity case, has paid as much to win the suit, as, under this statute, utility companies may be required to do. Moreover, it is quite probable

that, if appeals from interlocutory orders were permitted whenever the public service company chose to take them, the expense, in the long run, would be as great as or greater than by limiting them as herein specified; and certainly to allow them in trivial or procedural matters would burden the courts with numerous appeals, would drag the proceedings to an inordinate length, and, as already suggested, would give to companies, willing to risk any expense in order to tire out a complainant, an opportunity to defeat the purpose of the statute.

Nor is the fact that because section 30 (as amended by the Act of July 11, 1917, P. L. 806, 810), providing for appeals from the Superior Court to this court specifies a "final judgment, order or decree" as the prerequisite to a right of appeal, necessarily conclusive of the instant question, in view of the fact that the word "final" does not appear in section 17. This difference in language, while a matter for consideration, cannot operate to enlarge the meaning of the other sections, especially as there may be "judgments, orders or decrees" of the Superior Court which are interlocutory in their nature, simply remitting the record to the commission for further proceedings in consonance with the order of the court, and hence ought not to be appealed to this court until the controversy is ended, so far as the commission and Superior Court are concerned,—in itself another proof of the legislative intention not to cumber these cases with unnecessary appeals.

Nor has the fear of prolonged delays and unnecessary expense, in deciding jurisdictional matters, any foundation in fact; for, taking sections 17 and 31 of article VI, together, we find this supposed difficulty fully provided for. Since their inception, courts of chancery have exercised the right to grant injunctive relief against acts done or about to be done, to the injury of the party complaining. Originally the long arm of the chancellor reached out and stayed the hands of the common law judges in ordinary legal proceedings, as well as it did

those of administrative officers; but the exercise of this power, in the former instances, found little countenance here. One has to go far back, however, to find a time when a court of equity would not enjoin the proceedings of an administrative tribunal, if a proper cause for relief was presented. Presumptively the legislature knew this when it passed section 31, and intended thereby that this well-known and effective remedy should be applicable to proceedings by the new administrative jurisdiction it created, notwithstanding it had already provided that some of the orders of the commission should be the subject of an appeal under section 17; and to the end that long delays in applying this equitable remedy might not result, it made section 31 applicable to an order of any commissioner, as well as of the commission itself, and authorized relief by "modifying, suspending, or staying" the order, as well as by "annulling" it, adding, ex majori cautela, that every such "rule, regulation, finding, determination or order under the provisions of this act,......shall be and remain conclusive upon all parties affected thereby unless set aside, annulled, or modified in an appeal or proceeding taken as provided in this act." In accordance, therefore, with the principle that the methods provided by established practice will be followed, unless the new statute, being interpreted, declares otherwise, and, if it does, will be modified only to the extent indicated therein, we find no difficulty in concluding that, so far as rates, service and facilities are concerned, no appeal will lie under section 17, except from an order of the commission dismissing the complaint or requiring the respondent to satisfy it in whole or in part; while, under section 31, if, for jurisdictional reasons, affecting the parties or the subject-matter complained of, the commission or a commissioner is exceeding the powers given by the statute, an injunction may be granted, thereby once and for all disposing of the question thus raised. It follows that, in the present in-

stance, the appeal should have been quashed, and that the Superior Court erred in not so deciding.

The second question, which we specified, is: "If of a character appealable to the Superior Court, then are the orders of that tribunal, here attacked, of a character appealable to the Supreme Court?" Since the decree of the Superior Court results in a final dismissal of those complaints, it is clearly appealable under section 30 of article VI, of the act, as amended by the Act of July 11, 1917, P. L. 808; and so all the parties in interest agree.

The final question, specified by us, is: "If the appeals lie, then had the Public Service Commission the power, and should that power have been exercised at the time the commission made the orders complained of, to require the underlying or owning companies to make answer to the complaint and go to hearing on the complaint and answer?" This is the main point in the case, and it was correctly decided by the Superior Court. In answering it we are not concerned with what the legislature might have done, but with what it actually has done; for we are all of opinion the act does not authorize the commission to alter the leases of the underlying companies.

A wrongful impression seems to exist in certain quarters that all past or present contracts of a public service company are subject to revision, if the public service commission so wills. The Public Service Company Law, however, like all others not in the course of the common law and providing extrajudicial remedies (even though the exercise of the jurisdiction conferred may ultimately be brought within the scrutiny of a court), covers only such matters as are expressly or by necessary implication included within its terms; and while, under the act, the commission is given plenary powers touching the things committed to it, still, so far as concerns contracts made by the utilities, they are comparatively few in number. In the matter of rates, service and facilities,—and these are the only subjects referred to in the complaints

under consideration,—the powers of the commission are limited to the review of actions by operating companies, for only this character of utility company can affect rates, services or facilities by acts "done or about to be done, omitted or about to be omitted......in violation of any of the requirements or provisions of this act," and they alone furnish service "sufficient for the accommodation and safety of its patrons, employees and the public": article II, section 1(a). Hence where, as here, under legislative authority, such a corporation has transferred its franchises and assets and has ceased to function, the commission has no jurisdiction over it, since the company has no rates to make or collect, no service to render the public, and no facilities to furnish or extend. This conclusion alone defeats the intervening complaints before the commission, for they are directed against nonfunctioning corporations only. If it be true, as argued by appellants, that there is a residue of powers remaining in the underlying companies, notwithstanding the leases, doubtless the statute, if applicable, will be duly applied when, if ever, they attempt to exercise those powers; in these complaints nothing is alleged on this subject. So, also, if, despite the fact that the Philadelphia Rapid Transit Company is not made a party thereto, the present complaints are to be treated simply as auxiliary to the first proceeding, and as notice to the original railway companies to come in and defend their lease agreements, intervenors are no better off. Probably this was the purpose of the complaints, since, except in the case of joint rates, those of each utility company must be separately considered, and complaints against two or more cannot be joined together any more than two companies can jointly file a schedule of rates, those of one having no relation to those of the other; and this is true even if one is a customer of the other. No contract made by a utility is subject to a direct attack and revision, unless it is itself a rate contract; and no contract may be indirectly reviewed in such cases, unless it has some re-

lation to one or more of the elements to be considered in revising the rate. So far as affects the fair value of the property of the company, these elements are set forth in article V, section 20, of the act (P. L. 1415); and probably nowhere else has the whole matter been more carefully considered or better expressed than in the opinion by our Brother KEPHART (when on the bench of the Superior Court), in Ben Avon Borough v. Ohio Valley Water Company, 68 Pa. Superior Ct. 561. We need not quote therefrom; it suffices that fixed charges for franchises and assets, long since acquired and now entitled to be retained only by continuing the payments provided in the lease thereof, are not among those elements; they do not help to determine the value of existing assets, or the cost of present operation; and, hence, in the instance before us, the rates to the public cannot be increased or diminished by reason of the fact that the rentals called for by the leases were unreasonable when made or are unreasonable now. If this were not so, then the greater the fixed charges the greater would be the fare to be paid by the public, which would be directly in the teeth of the only reason on which such statutes can be sustained.

Besides, neither the commission nor the public has anything to do with the disposition of the rates which the utility is authorized to collect; nor is it any concern of either that the sum total thereof may not be sufficient to enable the operating company to pay its fixed charges and maintain or extend its service and facilities. The company is entitled to receive a reasonable return for the service it furnishes, and no more; the public is entitled to receive an adequate return for the reasonable rates it pays, and no more. Beyond making sure of these two things, the statute does not vest a greater power in the commission, so far as the matter under consideration is concerned. It has ample authority to see that its orders, as to service and facilities, are fully complied with by the Philadelphia Rapid Transit Company; if the effect of so doing is that the latter's stock-

holders receive no return on their investment, because of the necessity for compliance with the terms of the leases, this concerns them alone and not complainants or the public. Moreover, if the statute gives to the commission the power to reduce these rentals, it may also increase them, a conclusion which would be a great surprise to everybody, and against which, if decreed, these intervenors would be among the first to complain. As the matter now is, the law gives neither right, and hence the commission should have at once halted this attempt to induce it to exceed its powers.

Some point was made that the order overruling the demurrer should be affirmed because the act does not provide for such pleadings. This latter allegation is true, and hence the better practice would have been to follow the language of the statute and move to dismiss the complaints for whatever reason might be alleged against them. Fairness to the commission, as well as the saving of expense to all parties, calls for the pursuit of this course, even in cases, like the present, where the ultimate remedy, if the commission persists in entertaining jurisdiction, is by an injunction under section 31 of article VI. A motion to dismiss, with or without a reservation of the right to proceed in equity, would not, if refused, make the decision res adjudicata of the question of jurisdiction, which cannot be conferred by agreement of the parties, and certainly will not be inferentially granted by calling attention to the fact that it does not exist.

It follows that appellee was right in objecting to intervenors' attempt to subject the rentals to the jurisdiction of the commission, but was wrong in supposing the remedy for its error, in not dismissing the intervening complaints, was by an appeal.

Since the other sixty-two appeals raise the same questions as are above considered, we will, in each of them, make the same order as we enter here.

The decree of the Superior Court is reversed, the appeal from the order of the Public Service Commission is quashed, and the record is remitted to that body for further proceedings according to law, the costs in this court and in the Superior Court to be paid by appellee.

See also the preceding case.