## Wilson v. Public Service Commission

*Joseph Sharfsin*, for plaintiff.

*Paul H. Rhoads, Samuel G. Miller*, legal assistants, *E. Everett Mather, Jr.*, assistant counsel, and *John Fox Weiss*, counsel, for defendant.

HARGEST, P. J., November 7, 1934.—This matter comes before us upon preliminary objections to the bill of complaint.

The bill of complaint avers that since 1928 the plaintiff, practicing as an attorney at law, has been extensively engaged in numerous important cases before the Public Service Commission; and, since March 1, 1933, represented consumers of electricity in the Counties of Philadelphia, Montgomery, and Delaware, who objected to the schedule of proposed new rates and tariffs filed by Philadelphia Electric Company with the Public Service Commission, January 30, 1933; that one phase of said matter involving the burden of proof came before this court. and the plaintiff appeared herein; that this question was subsequently determined by the Supreme Court, and pursuant thereto the plaintiff, acting in his capacity as attorney for various consumers, appeared on a number of days during April, May, June, and July 1934, before Commissioner Frederick T. Gruenberg, who was conducting the hearings; that the plaintiff has expended great effort and consumed an unusually great length

of time in the preparation and presentation of the complaints filed by his clients, involving detailed and concentrated study of engineering and scientific problems involved in the controversy; that on July 9, 1934, the plaintiff protested to and made certain charges in respect to the sitting commissioner which was "an entirely personal issue by and between your complainant and the said commissioner"; that on July 16, 1934, the Public Service Commission adopted a resolution, as follows:

"Whereas, at hearing before the Public Service Commission of the Commonwealth of Pennsylvania in the complaints of J. Rawlins Ginther et al. v. Philadelphia Electric Company at complaint docket nos. 9515, etc., S. Davis Wilson, of counsel for complainants, was guilty of improper and unethical conduct, as is indicated by the transcript of the testimony of said hearing; and

"Whereas such conduct was unwarranted, offensive, contemptuous, and insolent;

"Now therefore be it resolved, that the said S. Davis Wilson be and is hereby refused permission to represent parties litigant before the Public Service Commission of the Commonwealth of Pennsylvania or to appear before said commission in such capacity."

A copy of this resolution was certified to the plaintiff on July 17, 1934.

The plaintiff, averring that the action of the commission is without any authority of law and deprives him of his right to practice and pursue his lawful profession without due process of law, asks that the order of the Public Service Commission be declared void and that the commission be restrained from putting such order into effect.

A rule was granted upon the commission to show cause why the injunction prayed for should not issue.

The defendant filed preliminary objections to the bill of complaint to the effect that (1) the bill does not set forth a cause of action; (2) that the plaintiff has a full and adequate remedy at law; (3) that an appeal would afford an earlier disposition of the case than this proceeding; and (4) that the Public Service Commission "had jurisdiction of both the subject matter and the individual", from which it is argued that this Court has no jurisdiction to inquire into what the Public Service Commission did.

### Discussion

1. This case involved the right of the Public Service Commission to disbar an attorney who theretofore practiced before it.

A court has the inherent right to disbar an attorney for illegal or unprofessional conduct which would bring the court and the administration of justice into disrepute: Wolfe's Disbarment, 288 Pa. 331; In re Graffius, 241 Pa. 222. In In re Gottesfeld, 245 Pa. 314, 317, it is said:

"In his high office the attorney-at-law is a minister of justice; he ceases so to be when, whether in the line of his professional work or outside of it, he prostitutes his knowledge of the law and the skill he has acquired therein to thwart the law by deceit and falsehood in its one and only purpose, viz., to accomplish distributive justice among men."

The powers inherent in the court should also be inherent in every important quasi-judicial body created to administer justice. The Public Service Commission of Pennsylvania is a body clothed with both legislative and judicial functions. While it is "an administrative arm of the legislature" (Commonwealth, ex rel., v. Benn, 284 Pa. 421, 434), it is also a quasi-judicial body: West Virginia Pulp & Paper Co. v. Public Service Commission, 61 Pa. Superior Ct. 555, 563. Being possessed of powers which are perhaps as far-reaching and

important in their effect upon the public generally as those of any court, it is essential that its proceedings should be conducted in a manner in keeping with the highest ethical ideals and standards of the administration of justice. If it had not power to determine who should appear as attorneys before it, it would be substantially crippled in the proper administration and discharge of the important functions of government exercised by it. To illustrate: It would be intolerable if an attorney who has been disbarred by the courts as morally unfit to practice could nevertheless practice before an administrative commission because that commission had no power to disbar him.

In the case of Goldsmith v. United States Board of Tax Appeals, 270 U. S. 117, the right of admission to practice before that board was involved. The board had published rules for the admission of persons to practice before it, and the issue was whether the board had power to adopt rules by which it might limit those who appeared before it. Chief Justice Taft said (p. 121):

"We think that the character of the work to be done by the Board, the quasi judicial nature of its duties, the magnitude of the interests to be affected by its decisions, all require that those who represent the tax-payers in the hearings should be persons whose qualities as lawyers or accountants will secure proper service to their clients and to help the Board in the discharge of its important duties. . . ."

After stating that other departments have special legislative authority to enroll attorneys, he said (p. 122):

". . . In view of these express provisions, it is urged that the absence of such authority in case of the Board of Tax Appeals should indicate that it was not intended by Congress to give it the power. Our view, on the contrary, is that so necessary is the power and so usual is it that the general words by which the Board is vested with the authority to prescribe the procedure in accordance with which its business shall be conducted include as part of the procedure rules of practice for the admission of attorneys."

The duties performed by the Board of Tax Appeals are, in many respects, like those performed by the Public Service Commission of Pennsylvania.

In Manning v. French et al., 149 Mass. 391, 21 N. E. 945, which involved the power of the Alabama Claims Commission created by Act of Congress to make rules regulating the admission of attorneys to practice before it, it was held that the commission had the power to make such rules regulating not only the admission but to deprive attorneys of the privilege of continuing practice.

Article v, sec. 26, of The Public Service Company Law of July 26, 1913, P. L. 1374, 66 PS §690, provides:

"The commission may make such rules and regulations, not inconsistent with the law, as may be necessary or proper in the exercise of its powers or for the performance of its duties".

This provision gives the Public Service Commission the right to make rules regulating the practice of attorneys before it. We also hold that, even in the absence of statutory right, the Public Service Commission has the inherent right to regulate such practice. The commission has made no such rules. Does the fact that there are no such rules prevent the commission from disbarring an attorney? We think not. The power to make general rules under which to act necessarily includes the power to act without rules in a particular case for the protection of both the commission and the public and to secure orderly processes in the trial of cases before the commission. We therefore conclude that the commission, upon a proper showing has the right to disbar the plaintiff.

2. The next question which arises is whether the commission may proceed to disbar an attorney without notice to him and opportunity to be heard.

The record, as presented in this case, shows no notice or hearing whatever upon the question of disbarment. The defendant has attempted to bring to the consideration of the court, in its brief of argument, certain extracts of the proceedings in the hearings before Commissioner Gruenberg. There is no paper on file in the case which brings any of those proceedings on the record, and therefore the court cannot predicate any conclusion upon them. The bill of complaint, which must be taken as true for the purpose of determining the primary questions of law, avers that Commissioner Gruenberg was sitting to take testimony in complaints filed by certain citizens represented by the plaintiff. The preamble of the resolution of disbarment recited that at a hearing before the Public Service Commission "S. Davis Wilson of counsel for complainants was guilty of improper and unethical conduct, as is indicated by the transcript of the testimony of said hearing", and that "such conduct was unwarranted, offensive, contemptuous, and insolent." He was therefore prohibited from thereafter appearing before the commission.

In Ex Parte Steinman et al., 95 Pa. 220, it is held:

"The office of an attorney is his property and he cannot be deprived of it unless by the judgment of his peers and the law of the land."

In 6 C. J., Attorney and Client, sec. 37, it is said:

"The action of the court in the exercise of this power [of disbarment] is judicial in its character, and the real question for determination in such proceedings is whether or not the attorney is a fit person to be longer allowed the privileges of being an attorney. The power is not an arbitrary and despotic one to be exercised at the pleasure of the court or because of passion, prejudice, or personal hostility; it is rather one to be used with moderation and caution, in the exercise of a sound judicial discretion, and only for the most weighty reasons, and upon clear legal proof."

This language clearly means that before disbarment there should be due process of law, and due process of law means notice and opportunity to be heard.

In the case of Goldsmith v. United States Board of Tax Appeals, 270 U. S. 117, 123, heretofore referred to, which involved not the disbarment but the right of the petitioner to practice as an accountant before the board, Chief Justice Taft said:

"We think that the petitioner having shown by his application that, being a citizen of the United States and a certified public accountant under the laws of a State, he was within the class of those entitled to be admitted to practice under the Board's rules, he should not have been rejected upon charges of his unfitness without giving him an opportunity by notice for hearing and answer. The rules adopted by the Board provide that 'the Board may in its discretion deny admission, suspend or disbar any person.' But this must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process."

The defendant relies upon the case of Ex Parte Terry, 128 U. S. 289. That case involved punishment for contempt growing out of acts committed in the presence of the court. It has always been held that it is within the inherent power of the court to punish for contempt committed in the presence of the court or where an attorney has been convicted of a felony or a misdemeanor involving moral turpitude and the record of the conviction has been duly certified to the court. In such case, no notice is necessary. In Pennsylvania, the right of an attorney to practice his profession has been guarded by the courts and never taken away without a judicial inquiry.

In Moyerman's Case, 312 Pa. 555, it is held that the findings of the trial court are persuasive, but the appellate court will review the evidence de novo. In Klensin v. Board of Governance of the Pennsylvania Bar, 312 Pa. 564, it is held:

"The function of the Board of Governance is not one of judicial review of the findings of the hearing masters but is to determine, assuming such findings to be correct, whether the recommendations of the masters to the Supreme Court are warranted. The judicial review is by the Supreme Court."

From the statements made by counsel in this case, it is very apparent that the Public Service Commission acted upon a record made before a sitting commissioner which was submitted to it without the knowledge of the plaintiff that it would be so submitted. If the principles of the Klensin case are to be applied, this certainly could not be said to be due process of law.

In the case of Stone v. Board of Governance of the Pennsylvania Bar, 312 Pa. 576, the case of Ex Parte Steinman et al., 95 Pa. 220, has been modified insofar as the latter case held that an attorney should not be disbarred for a criminal offense "without a formal indictment, trial and conviction", but neither the Stone case nor any other case has held that, in the absence of a trial or conviction for a criminal offense, an attorney could be disbarred without a hearing. It certainly follows that, where there is no criminal offense charged, a hearing must be afforded. We therefore conclude that so far as this record shows there was no due process of law before the resolution of disbarment by the Public Service Commission was passed.

3. The question then arises whether this court has jurisdiction to restrain the Public Service Commission from putting its illegal resolution into effect, and upon that proposition the defendant contends that the plaintiff has a complete and adequate remedy at law and, since the commission has jurisdiction both over the subject matter and the party, equity cannot interfere. The very purpose of equity is to prevent the illegal exercise of some supposed power or authority. Every just order or rule known to the equity courts was born of some emergency: 21 C. J. (Equity), sec. 188, note 95.

Article VI, sce. 31, of the Act of July 26, 1913, P. L. 1374, 66 PS §881, vests in this court exclusive jurisdiction in all proceedings for injunctions against the Public Service Commission, and section 17 of article VI of the same statute, 66 PS §811, provides for an appeal to the Superior Court "within thirty days after the filing of any finding or determination by the commission, or after the date of service of any order . . . or the entry of an order modifying, amending, rescinding, or affirming the original finding, determination, or order".

In Citizens Passenger Ry. Co. v. Public Service Commission et al., 271 Pa. 39, 53, the right of appeal and the remedy by injunction were considered in an exhaustive opinion. It was there said:

"One has to go far back, however, to find a time when a court of equity would not enjoin the proceedings of an administrative tribunal, if a proper cause for relief was presented. . . . In accordance, therefore, with the principle that the methods provided by established practice will be followed, unless the new statute, being interpreted, declares otherwise, and, if it does, will be modified only to the extent indicated therein, we find no difficulty in concluding that, so far as rates, service and facilities are concerned, no appeal will lie under section 17, except from an order of the commission dismissing the complaint or requiring the respondent to satisfy it in whole or in part; while, under section 31, if, for jurisdictional reasons, affecting the parties or the subject-matter complained of, the commission or a commissioner is exceeding the powers given by the statute, an injunction may be granted, thereby once and for all disposing of the question thus raised."

The argument of the defendant goes to the proposition that, because the commission had jurisdiction over both the parties and subject matter, a court of equity cannot review the manner in which the commission deals with the rights involved. This argument goes to the extent of holding (and counsel for the commission frankly so admitted on the oral argument) that, if the commission violated every applicable constitutional provision to be found either in the Federal or State Constitution, no relief could be had in equity in this court. It is contended that the case of Philadelphia Electric Co. v. Public Service Commission et al., 38 Dauph. 52, affirmed in 314 Pa. 207, sustains that proposition. This court held:

"The jurisdiction of a Court of Equity is limited to the question of the jurisdiction of the Commission over the parties and the subject matter."

The Supreme Court said (p. 215) :

"We, therefore, decide that, in cases like the present, the commission has the power from the inception of the proceedings to direct the procedure before it, which should conform, as nearly as may be, to that of judicial proceedings; that no appeal will lie from its rulings, before final decree, unless the jurisdiction of the commission over the parties before it, or of the subject-matter being considered, is challenged".

We do not understand that the language of the Supreme Court intended to apply to a case like the instant case, where the effect of the ruling of the commission is to deprive an attorney of his right to practice without due process of law.

Nor can we conceive how an appeal would afford the plaintiff an adequate remedy. The plaintiff was not party to the proceeding. The proceeding before the commission was docketed "J. Rawlin Ginther et al. v. Philadelphia Electric Co., C. D. No. 9515, et seq." An order was docketed in the midst of that proceeding disbarring the plaintiff from further practice before the commission. No separate proceeding was made of the disbarment case. The plaintiff being no party to the proceeding, what right had he to take an appeal? Could he prejudice the interests of either party by taking the record away from the commission to the Superior Court? What record could he bring up on appeal? Could it be said that the whole record up to that point should be taken to the Superior Court? How could he, not being a party to the proceedings, pick out certain extracts from the proceedings and bring them before the Superior Court on appeal? Who would make up the record? Moreover, there was no final order in any issue in those proceedings, and only a final order can be appealed from. Mr. Justice Simpson, in the language above quoted, says that the proceedings before the commission should conform, as nearly as may be, to that of judicial proceedings. We cannot conceive that a court would of its own motion and without notice disbar an attorney who had been guilty of conduct however reprehensible, and it is very doubtful in a court consisting of two or more members whether, under the recent rule of the Supreme Court, a single judge would enter a rule to disbar an attorney and sit in the case himself without calling in the majority of his associates. We cannot conceive of a judge disbarring an attorney because of some reprehensible conduct in court before him, without notice and an opportunity to be heard. Moreover, even though the facts may be sufficient to justify disbarment in this very case, the legal question raised is the manner in which the commission sought to exercise that power. The plaintiff was entitled to be heard upon the legal phases of the case before the Commission entered judgment, even though the facts may have justified the action.

It is contended that, because Commissioner Gruenberg was sitting in the proceeding the record which he made was before the commission, the commis-

sion had the right to act upon it without notice and hearing. Commissioner Gruenberg was sitting for the purpose of taking the testimony. He had no right, sitting alone, to make any order or decree in the issues involved in the proceeding in which he was taking the testimony. How, then, did the matter get before the commission? The record does not disclose. If an attorney were guilty of conduct before a judge in open court, "unwarranted, offensive, contemptuous, and insolent," such as the resolution of the commission says the plaintiff's conduct before Commissioner Gruenberg was, the judge might immediately have imposed a sentence for contempt, but no judge would have gone to the extent of disbarring without entering a rule in an independent proceeding in which the issue of disbarment could be properly heard. If due process requires such a proceeding in a court, it requires it quite as much before an administrative commission. There is no escape from the conclusion that there was no hearing on the issue of disbarment. We are expressing no opinion whatever on the merits or what should be the judgment of the commission after proper hearing. But the conclusion is irresistible that the constitutional rights of the plaintiff have not been safeguarded.

Now, November 7, 1934, the answer raising preliminary objections to the bill of complaint is hereby overruled, and the defendant is required to answer to the merits within 30 days. The rule to show cause why a preliminary injunction should not issue is hereby made absolute, and a preliminary injunction is hereby issued restraining the Public Service Commission from putting its resolution of July 16, 1934, into effect, pending the final disposition of this proceeding.