Commonwealth v. Petersheim et al.

*Thomas F. Lansberry, Coffroth & Boose* and *Robert J. Boose,* for Commonwealth.

*E. O. Kooser, James O. Courtney* and *Frank Lucente,* for defendants.

BOOSE, P. J., May 17, 1949.—Each of the above-entitled cases is an appeal by defendant therein named from the summary conviction and sentence before a

justice of the peace for alleged violations of the compulsory attendance requirements of the School Code of May 18, 1911, P. L. 309, as amended. These appeals were specially allowed and heard de novo in the manner provided by law. The trial and determination of these appeals imposes the duty upon the court to find the facts, determine the law applicable thereto, and decide the guilt or innocence of defendants: Commonwealth v. Peacock, 118 Pa. Superior Ct. 168. From the pleadings (transcripts of appeal and petitions for a special allocatur) and the evidence, we find the following

### Facts

1. Prior to and at the time of their arrest, conviction and sentence for violation of the compulsory attendance requirements of the School Code, all defendants were farmers residing in the Township of Elk Lick, County of Somerset and State of Pennsylvania.

2. The Township of Elk Lick forms and constitutes a part of the Joint School District of Elk Lick Township-Salisbury Borough.

3. Defendant, Jonas Petersheim, is the father of Mildred Petersheim and Anna Petersheim, who are over 15 years of age, having been born November 30, 1931, and April 5, 1933, respectively.

4. Defendant, Menno G. Brenneman, is the father of John Brenneman, who is 15 years of age, having been born August 1, 1933.

5. Defendant, Amos J. Yoder, is the father of Dora Yoder, who is now 16 years of age, having been born March 14, 1933.

6. Defendant, Enos Mast, is the father of Katie Mast, who is 15 years of age, having been born October 5, 1933.

7. All of the above-named children were enrolled by the school enumerator of the school district for the school term 1948-1949, which began on September 7,

1948, and were assigned to either the Hillside Parochial School or the Cross Roads Parochial School, in the township, which are maintained by the Amish Mennonite Parochial School Association of the Casselman River District.

8. None of the children have been in attendance at the parochial schools, having previously completed the eighth grade therein, or the public schools in the school district for the school year 1948-1949.

9. All of the children have attained the age of 15 years, or over, and are usefully engaged in farm work or domestic service in the private homes and on the farms of their parents.

10. Prior to or after their arrest, defendants applied to the attendance officer and the board of school directors of the school district for a permit, excusing the nonattendance of the children at the public schools of the district, but such permits were refused.

11. On October 12, 1948, H. N. Patton, the attendance officer, made informations before C. A. Maust, a justice of the peace, alleging that on October 12th defendants did then and there wilfully and unlawfully fail, neglect and refuse to send their children to a day school in which the English language is taught, in violation of section 1414 of the School Code, and that defendants neglect and refuse to send their children to school notwithstanding the fact that they had already been arrested and convicted for violation of the act during the present school year.

12. The defendants, having admitted their failure to send their said children to the public schools of said school district, were found and adjudged guilty of a violation of the compulsory attendance requirements of the School Code, as amended, and were sentenced to pay a fine of $5.00 for the use of the school district, together with the costs of prosecution, and in default of payment thereof, were committed to the County Jail

for five days for each of four violations, and the sentences to run consecutively.

13. The present appeals by the defendants were specially allowed and filed on October 16, 1948, and within five days after their convictions and sentences.

14. The defendants are members of the religious sect or denomination, known as Amish Mennonites. They have conscientious scruples and objections, based upon their religious faith and beliefs, against compulsory attendance of their children at the public schools, after they have completed the elementary grades and attained the age of fifteen years or over.

15. Since the hearing of these appeals, the defendant Jonas Petersheim, has sold his farm in Elk Lick Township and moved to the State of Maryland, presumably to escape the oppression and hardship caused by the enforcement of the compulsory attendance school law, resulting in his repeated arrest, sentence to the payment of fines, or in default thereof to imprisonment in the County Jail. He is no longer within the jurisdiction of the school authorities of said school district, or the jurisdiction of this court.

## Discussion

The foregoing findings of fact are not in dispute; only the law applicable thereto is in controversy. Admittedly, the children of defendants have not been in attendance at the public schools of the school district on the date mentioned in the informations, charging defendants with a violation of the compulsory attendance law, or at any other days or times within the present school term. This admission convicts defendants of violations, unless they are exempt from the provisions of the School Code, as amended, requiring the compulsory attendance of said children. Their defense to these prosecutions are based upon two grounds, viz: (1) That the provisions of the act requiring regular attendance

do not apply to the children of defendants because they have attained the age of 15 years and are engaged in farm work or domestic service in the private homes of their parents, and were, therefore, entitled to a permit to be issued by the school board of the school district, and (2) that defendants are protected from prosecution, conviction and sentence for the alleged violation of the compulsory attendance requirements of the School Code, by the constitutional guaranty of religious freedom, afforded by section 3 of article 1 of the Constitution of Pennsylvania, and the fourteenth amendment of the Constitution of the United States. These defenses will be considered in their order.

1. Section 1414 of the original School Code of May 18, 1911, P. L. 309, requiring every parent, guardian or other person having control or charge of any child or children, between the ages of 8 and 16 years, to send such child or children to a day school in which the English branches are taught, continuously through the entire term, has undergone successive amendments by the Acts of April 18, 1919, P. L. 58; July 21, 1919, P. L. 1084; March 26, 1925, P. L. 76; April 4, 1925, P. L. 131; May 29, 1931, P. L. 243; July 1, 1937, P. L. 2560, and June 24, 1939, P. L. 786. Section 4 of the act last cited, further amending section 1416 of the code, provides, in part, as follows:

"Nor shall the said provisions (requiring regular attendance) apply to any child who has attained the age of fifteen years and is engaged in farm work or domestic service in a private home on a permit issued by the school board or the designated school official of the school district of the child's residence, in accordance with regulations which the superintendent of Public Instruction is hereby authorized to prescribe."

We have found as a fact, based upon the uncontradicted evidence, that the above-named children of defendants are usefully engaged in farm work or domes-

tic service in the private homes and upon the farms of defendants. This finding brings them within the above-quoted portion of the amending act, and would exempt defendants from the compulsory attendance provisions of the school law, if the children had been so engaged on permits issued by the school board or the designated school official of said school district. The attendance officer refused to issue such permits, and his action was upheld by the board of school directors. Under the evidence, there can be no doubt that the action of the board of directors, in refusing such permits, was actuated and motivated by the fact that such permits could not legally be issued in accordance with the regulations prescribed by the Department of Public Instruction, which are, inter alia, that "Evidence of need should be furnished by the parent or guardian. The evidence should be sufficient to show the services of such child are needed as a matter of necessity and not merely a convenience to parents," with the further provision "that the family is in such dire financial circumstances as to make necessary the withdrawal of the child from school at such an early age and thereby jeopardizing his educational future." Defendants' counsel earnestly argue and contend that the Superintendent of Public Instruction, in prescribing the regulations, exceeded his authority, and that said regulations are unreasonable and arbitrary. This contention is not without reason and authority.

The amending Act of June 24, 1939, P. L. 786, was enacted to appease and mollify the opposition of the religious sect or denomination, known as the Amish Mennonites, to the compulsory attendance provisions of the School Code; School, Farm and Domestic Work Permits, 38 D. & C. 359. For years they have appealed to the legislature to modify the requirements of the compulsory attendance law, because they have conscientious scruples, based upon their religious faith and

beliefs, that their children should not be subject to the operation of the law after they have attained a certain age and can be usefully engaged in the tilling of the soil, which is their principal occupation and pursuit in life. Although the act expressly authorizes the Superintendent of Public Instruction to prescribe regulations, the force and effect of the regulations in question would practically defeat and nullify the purpose and intendment of the amendment. It may well be doubted whether there is a single family of this religious sect, which is in "such dire financial circumstances as to make necessary the withdrawal of the child from school." These people take care of their own and are never dependent upon public charity. It must be conceded that the legislature may delegate authority to the Superintendent of Public Instruction to prescribe reasonable regulations for the purpose of effectively carrying the compulsory attendance provisions of the school law into effect, but such regulations cannot be extended to amending or defeating the purpose and intent of the statute itself: 16 C. J. S. 512; Ferris v. Swetts, 158 Pa. Superior Ct. 645; Citizens Passenger Railway Co. v. Public Service Commission et al., 271 Pa. 39; Day v. Public Service Commission et al., 312 Pa. 381. A regulation by the Superintendent of Public Instruction which is not within the limits of reasonable discretion will not be enforced: Ashley Borough School District's Petition, 9 D. & C. 753. Upon this branch of the defense it may be concluded that if the action of the board of school directors of the district, in refusing exemption permits to defendants' children, was based upon these regulations, it constituted an abuse of discretion. If the children of defendants were entitled to such exemption permits, and the board of school directors of the school district abused their discretion in refusing to issue the same, then defendants cannot be convicted of the alleged violation

of the compulsory attendance provisions of the School Code, as amended.

2. Assuming, however, that the board of school directors exercised a wise and sound discretion in refusing to issue said exemption permits to defendants' children, the second branch of the defense rests upon more substantial ground. As their second defense to these prosecutions for alleged violations of the compulsory attendance provisions of the School Code, defendants invoke the protection of the Constitutional guaranty of religious freedom afforded by the Constitution of Pennsylvania and the Constitution of the United States. Article I, sec. 3 of the Constitution of Pennsylvania provides:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can of right be compelled to attend, erect or support any place of worship, or to maintain any ministry against his consent; no human authority can, in any case whatever, control or interfere with the rights of conscience and no preference shall ever be given by law to any religious establishments or modes of worship."

The fourteenth amendment to the Constitution of the United States provides:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Statutes making the education of children compulsory have become very general in the United States, and the constitutionality of the type of statute which has usually been enacted is beyond dispute, for the natural rights of a parent to the custody and control of his infant child are, to an extent, subordinate to the

power of the State, and may be restricted and regulated by municipal laws. One of the most important natural duties of the parent is the obligation to educate his child, and this duty he owes not to the child only, but to the Commonwealth. If he neglects to perform it or wilfully refuses to do so, he may be coerced by the law to execute such civil obligation: 24 R. C. L. 622. Defendants are not questioning the constitutionality of the compulsory attendance provisions of our school law, nor are they opposed to the education of their children. They invoke the above-quoted constitutional provisions in the protection of their religious freedom and right of conscience guaranteed thereby, and the inhibition that no State shall enforce any law which abridges or infringes such privileges or immunities. Religious liberty is the exercise of the religious freedom under the guaranty of the Constitution. The right of conscience is a right to worship the Supreme Being according to the dictates of the heart; to adopt any creed or hold any opinion whatever on the subject of religion, and to do, or forbear to do, any act for conscience sake, the doing or forbearing of which is not prejudicial to the public weal: Commonwealth v. Lesher, 17 S. & R. 155. In speaking of the liberty guaranteed by the fourteenth amendment, the Supreme Court of the United States said:

"While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, *to worship God according to the dictates of his own conscience,* and generally to enjoy those privileges long recognized at common law as essential

to the orderly pursuit of happiness by free men": Meyer v. Nebraska, 262 U. S. 390. (Italics supplied)

The question here involved is this: May the Commonwealth of Pennsylvania enforce a compulsory attendance law which abridges and infringes the religious liberty and right of conscience of defendants?

We have found as a fact, supported by the uncontradicted evidence, that defendants are members of the religious sect or denomination known as Amish Mennonites. They have conscientious and religious scruples and objections, based upon their religious faith and beliefs, against the compulsory attendance of their children at the public schools, after they have completed the elementary grades and attained the age of 15 years or over. After that age, they believe that their children should be at home and usefully employed in tilling the soil. They lead plain and simple lives, and avoid conformity to the conventional ways of the world. No one can doubt the honesty and sincerity of their religious faith and beliefs, which are founded upon the Bible, viz: Matt. 5:38-46; Rom. 12:17-21; Cor. 6:1-6 and 1 Pet. 2:13-17. A condensed statement of their beliefs in regard to higher education is contained in the following confession of faith: "And since it is a known fact that lack of faithful ministers and the erring of the sheep because of the lack of good doctrine, arise principally from the unworthiness of the people; therefore the people of God needing this, should not turn to such as have been educated in universities, according to the wisdom of man, that they may talk and dispute, and seek to sell their purchased gift for temporal gain; and who according to the custom of the world do not truly follow Christ in the humility of regeneration."

The question presented by these appeals bears a close analogy to the line of cases known as the Jeho-

vah's Witnesses. The trend of the recent and modern decisions is in favor of the religious liberty of the individual when it comes in conflict with a State law, ordinance or regulation: Murdock v. Pennsylvania (City of Jeannette), 319 U. S. 105, 87 L. Ed. 1292; West Virginia State Board of Education et al. v. Barnette et al., 319 U. S. 624, 87 L. Ed. 1628, 147 A. L. R. 674, reversing Minersville School District v. Gobitis, 310 U. S. 586, 84 L. Ed. 1375, 127 A. L. R. 1493; Commonwealth v. Conte, 154 Pa. Superior Ct. 112; Commonwealth v. Crowley, 154 Pa. Superior Ct. 116. Following the reasoning and ruling of these cases the conclusion necessarily follows that defendants may not be convicted, fined and imprisoned for their failure to comply with the compulsory attendance school law, because the enforcement of the law against them is an abridgement and infringement of their constitutional rights of religious liberty and conscience. The Commonwealth of Pennsylvania may not enforce any law which shall abridge the privileges and immunities of citizens of the United States. The members of this religious sect are citizens of the United States and are under the protection of the fourteenth amendment.

### Order

Now, May 17, 1949, after hearing the evidence and the arguments of counsel, we find and adjudge defendants not guilty of the alleged violation of the compulsory attendance provisions of the School Code. The costs of this proceeding shall be paid by the Joint School District of Elk Lick Township-Salisbury Borough.

NOTE.—On appeal, the foregoing order was affirmed by the Superior Court. The opinion of the court, reported in 166 Pa. Superior Ct. 90, holds merely that the Commonwealth has no right to appeal and does not discuss the merits.