## LACLEDE GAS LIGHT CO. v. PUBLIC SERVICE COMMISSION OF STATE OF MISSOURI et al. (CITY OF ST. LOUIS, Intervener).

### No. 593.

District Court, W. D. Missouri, Central Division.

Oct. 16, 1934.

Robert W. Otto, of St. Louis, Mo., and Wm. T. Ragland and James A. Potter, both of Jefferson City, Mo., for plaintiff.

Sam O. Hargus, General Counsel, Public Service Commission, of Jefferson City, Mo., and Roy McKittrick, Atty. Gen., for defendants.

Before VAN VALKENBURGH, Circuit Judge, REEVES and OTIS, District Judges.

PER CURIAM.

On July 5, 1933, the city of St. Louis made application to the Public Service Commission of the State of Missouri for an order requiring the Laclede Gas Light Company immediately to reduce its St. Louis rates for gas for domestic use by 20 per cent. During the hearing before the Commission which followed this application, the company asked authority to increase its rates by 20 per cent. On September 21, 1933, the Commission filed its report and order, three commissioners concurring and two dissenting. A motion for rehearing was filed and overruled. In the order, the full text of which we set out in the margin,* both applications are denied but the company is required to file a new schedule of rates showing a reduction of $212,000 per annum; the new schedule to become effective November 1, 1933. Before the arrival of that date the company filed its bill here praying equitable relief against the enforcement of the Commission's order. The matter now for decision is whether a temporary injunction shall issue.

It appears from the report of the Commission, attached to the bill as an exhibit, that the order of September 21, 1933, was intended only to be effective temporarily although no such limitation is expressed in the order itself. When the application of the city of St. Louis was made the Commission was about to engage in a full and complete valuation of the properties of the Laclede Gas Light Company. We are advised, at the time of the preparation of this opinion, that that valuation has gone forward, that all the evidence has been taken,

and that the Commission shortly will make its final decision as to the true present value of the company's properties used and useful by it as a public utility.

Absent a full and up-to-date valuation the Commission found tentatively that the value of the used and useful gas property of the company as of December 31, 1932, was $39,062,000, that a fair rate of return on that value was 6½ per cent., and that that rate of return would be realized if the revenues of the company were reduced $212,000 per annum based on the 1932 sales.

The bill alleges that the fair value of the company's used and useful property is not less than $51,000,000, that the Commission's tentative valuation of $39,062,000 as to substantial parts thereof was based on no evidence at all, as to other substantial parts thereof was reached by incorrect methods of valuation, and by the use of data not offered in evidence, and, as a whole, is so grossly inadequate as that a rate of return based on it necessarily is confiscatory. The bill also alleges that a 6½ per cent. return on a fair valuation is confiscatory. The verified bill is further supported by affidavits witnessing the truth of its allegations of fact.

 1. In the present state of the law the plaintiff could not in this court seek relief even from an alleged confiscatory rate order made by state authorities but when this bill was filed it might do so. The 1934 statute (Judicial Code § 24, as amended by Act May 14, 1934 (28 USCA § 41 (1), depriving federal inferior courts of jurisdiction in cases of this character does not apply to this proceeding initiated before the enactment of that

---

* This case having been duly heard and submitted, and the Commission on this date having filed its report containing its findings and conclusions thereon, which said report hereby is made a part hereof,

Now, therefore, it is, after due deliberation,

Ordered: 1. That the application of the City of St. Louis for an immediate and temporary reduction of 20 per cent. on the domestic gas rates charged by Laclede Gas Light Company in the City of St. Louis be and hereby is denied.

Ordered: 2. That the Company's request for an increase of 20% in all rates charged by it for gas service in the City of St. Louis be and hereby is denied.

Ordered: 3. That the tentative fair value of the used and useful gas property of Laclede Gas Light Company as of December 31, 1932, for the purposes of this case, is hereby found to be not less than the sum of $39,062,000.

Ordered: 4. That a fair rate of return upon the tentative fair value herein found is fixed at 6½ per cent. per annum.

Ordered: 5. That Laclede Gas Light Company shall file a new schedule of rates for domestic and commercial gas service which, based upon 1932 sales, will show a reduction of approximately $212,000 per annum; the said schedules to be filed on or before October 12, 1933, and to become effective November 1, 1933.

Ordered: 6. That this order shall take effect twenty days after this date, and that the Secretary of the Commission forthwith will serve certified copy of same on all parties interested herein, and that each of said parties shall notify the Commission before the effective date of this order in the manner prescribed by Section 25 of the Public Service Commission Law whether the terms of said order are accepted and will be obeyed.

statute. The contention is made, however, in the answers of defendants (they do not press it in their briefs), that before the plaintiff can come here it must have exhausted its remedies in the state courts. The settled law is to the contrary. While there is no doubt that a utility must exhaust its administrative remedies before it can have equitable relief in federal court against rates fixed by state authorities, that stage had been reached in this proceeding when the plaintiff's petition for a rehearing was overruled. The fact that it might then have had in the state courts a judicial review of the Commission's order (and the review there is judicial, State ex rel. v. Brown, 326 Mo. 230, 31 S.W.(2d) 208; State ex rel. v. Public Service Commission, 329 Mo. 918, 47 S.W.(2d) 102) does not prevent it from seeking equitable relief in a federal court on constitutional grounds. Railroad, etc., Commission v. Duluth St. Ry. Co., 273 U. S. 625, 627, 47 S. Ct. 489, 71 L. Ed. 807.

■ We have no doubt then touching the jurisdiction of this court, nor that there is jurisdiction in equity in this case. Nor can we doubt that under the allegations in the bill, corroborated by affidavits filed, the plaintiff should have the temporary injunction prayed. If it is compelled to abide by the order of the Commission pending final hearing and should that final hearing result in a permanent injunction, it will have suffered a substantial and irrecoverable loss, confiscatory in its nature.

■ 2. Upon the facts as we now have them (the hearing on the merits may give us entirely different facts), the Commission undervalued plaintiff's used and useful property. It is difficult, moreover, to escape the conclusion that this undervaluation was reached arbitrarily and by methods which cannot be approved. For example, the Commission reduced a going-concern value which previously after hearing it had fixed at $5,518,000 to $2,000,000 and confessedly made its finding in this regard without any evidence upon which to base it. Again the Commission previously had determined after full hearing that the company required $2,600,000 as working capital; it reduced that allowance to $1,500,000 confessedly without evidence upon which to base its finding. To value property for rate making without evidence is a denial of due process. Northern Pac. R. R. Co. v. Dept. Public Works, 268 U. S. 39, 44, 45 S. Ct. 412, 69 L. Ed. 837. Again, because of a temporary decrease in the company's business the Commission applied a percent-

age reduction to the valuation of all the company's property on the theory that if the use of property falls off by 4.9 per cent. then 4.9 per cent. of the property is no longer useful and should be devalued accordingly. A valuation reached by incorrect methods cannot be sustained. Chicago, etc., R. Co. v. Public Utilities Commission, 274 U. S. 344, 351, 47 S. Ct. 604, 71 L. Ed. 1085. This theory seems to us fundamentally unsound.

Our views concerning this theory are expressed admirably in the dissenting opinion of Commissioner English when this matter was before the Commission. He said:

"* * * the theory * * * is utterly illogical, * * * by reason of its being applied generally, that is, to each and every item making up the total of the plant. The production plant is being reduced 4.9%, as are the holders, mains, services, meters, and general equipment. Much of this equipment must necessarily remain of the same size, irrespective of the extent of the use, if they are used at all. For example, a large item of the Company's property consists of meters. Over ninety-four per cent of the meters are the ordinary five-light meter installed for residential and small commercial customers. These are the smallest meters in general use by gas companies. They are of identically the same size, whether the customer uses 100 feet or 1000 feet or 5000 feet per month. If the Company were reconstructing its plant for the service of 4.9% less usage these meters would be installed just exactly as they are now. The same is true respecting services and mains which constitute by far the largest part of the Company's property in value. Services and mains of the same size would be installed to serve 4.9% less annual usage.

"Furthermore, the application of this theory seems to us to be illogical in view of the fact that the cost per unit of much of the Company's property does not vary in the same ratio as does the capacity. For example, a six-inch main does not cost six-eighths nor nine-sixteenths as much as an eight-inch main, and so on through many of the items comprising the Company's property. If the plant were reconstructed to serve a permanently lessened capacity of 4.9% its cost would not be 4.9% less than a plant of 100% capacity. For the foregoing and other reasons, we believe that the application of the principle of a horizontal per cent reduction in the rate base, because of the decline in these times of consumption, is wholly inadmissible and indefensible in the present case."

3. Other questions discussed in the briefs submitted might well be discussed, but what we have said is sufficient for present purposes. We make one final observation.

■ It is earnestly urged by defendants and intervener that the Commission's order should be permitted to go into effect because it is intended only to be temporary. But, as we have pointed out, the order itself is not so limited. Moreover, the constitutional prohibition against the taking of property without due process of law contains no exception permitting a taking of some property or a taking during a limited period of time.

The temporary injunction prayed by plaintiff will issue. An appropriate decree may be submitted for approval and entry.