## EDISON LIGHT & POWER CO. v. DRIS-COLL et al.

District Court, M. D. Pennsylvania.

Oct. 18, 1937.

Walter Biddle Saul, of Philadelphia, Pa., and Morgan S. Kaufman, of Scranton, Pa. (Clarence W. Miles, of Baltimore, Md., Travis, Brownback & Paxson, Edward F. Huber, and Bradford S. Magill, all of New York City, and J. Harry La-Brum, of Philadelphia, Pa., of counsel), for complainant.

John C. Kelley, Samuel G. Miller, and Edward Knuff, all of Harrisburg, Pa., for respondents.

Before DAVIS, Circuit Judge, and JOHNSON and WATSON, District Judges.

JOHNSON, District Judge:

This is a suit in equity to restrain the Pennsylvania Public Utility Commission from enforcing an order made by it pursuant to section 310 of the Pennsylvania Public Utility Law of 1937 (66 P.S.Pa. § 1150), fixing temporary rates for electricity on the grounds that the statute on which the temporary rates are based is unconstitutional, and that the order fixing the temporary rates is also unconstitutional and invalid.

On January 27, 1936, the Pennsylvania Public Service Commission, predecessor of respondents, instituted on its own motion an investigation, for the purpose of determining the reasonableness of rates charged and to be charged by the complainant for electric service. Numerous hearings were held by the Public Service Commission, and later by respondents. Voluminous testimony and exhibits were introduced and the hearings were concluded on June 23, 1937. Nothing remains to be done except final argument and the determining of final rates by the Public Utilities Commission, after consideration of the record.

At the conclusion of the final rate hearings before the Public Utilities Com-

mission, a hearing was held by it to determine whether temporary rates should be prescribed. The entire record of the permanent rate proceeding was incorporated as part of the temporary rate proceeding. On July 13, 1937, the Public Utilities Commission ordered the complainant to put into effect temporary rates for electricity, pending a determination of final rates, which would effect a reduction of approximately $435,000 in its annual gross operating revenue. The Public Utility Commission found from a study of the record evidence that a proper basis for the prescription of temporary rates is $5,250,000, and, for the purpose of determining temporary rates, applied a rate of 6 per centum, thereby allowing $315,000 for return. It was stated that on the basis of the allowance, the arithmetical difference between the allowable and actual gross revenue during the year ended December 31, 1936, was $524,000 but the actual reduction ordered was only $435,000. Pursuant to an opinion of the superior court of Pennsylvania in Pennsylvania Power & Light Co. v. Public Service Commission; 193 A. 427, the Public Utility Commission made a second order on July 27, 1937, rescinding the first order but requiring the same rate reduction and fixing a schedule of temporary rates.

Due to the pendency of the proceeding before the court, the Public Utility Commission has extended the effective date of the temporary rate order to October 15, 1937.

The contentions of the complainant are that section 310 of the Public Utility Law, under which the temporary rate order was made, is contrary to the Fourteenth Amendment to the Constitution of the United States of America, and that the order also violates the Fourteenth Amendment by confiscating the property of complainant.

Two questions arise here: First, the constitutionality of section 310; and, secondly, the validity of the order of July 27, 1937, fixing the temporary rates.

Section 310 provides: "(a) The commission may, in any proceeding involving the rates of a public utility brought either upon its own motion or upon complaint, after reasonable notice and hearing, if it be of opinion that the public interest so requires, immediately fix, determine, and prescribe temporary rates to be charged by such public utility, pending the final determination of such rate proceeding. Such temporary rates, so fixed, determined, and prescribed, shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property (when first devoted to public use) of such public utility, used and useful in the public service, and if the duly verified reports of such public utility to the commission do not show such original cost, less accrued depreciation, of such property, the commission may estimate such cost less depreciation and fix, determine, and prescribe rates as hereinbefore provided.

"(b) If any public utility does not have continuing property records, kept in the manner prescribed by the commission, under the provisions of section five hundred two of this act, then the commission, after reasonable notice and hearing, may establish temporary rates which shall be sufficient to provide a return of not less than an amount equal to the operating income for the year ending December thirty-first, one thousand nine hundred thirty-five, or such other subsequent year as the commission may deem proper, to be determined on the basis of data appearing in the annual report of such public utility to the commission for the year one thousand nine hundred thirty-five, or such other subsequent year as the commission may deem proper, plus or minus such return as the commission may prescribe from time to time upon such net changes of the physical property as are reported to and approved for rate-making purposes by the commission. In determining the net changes of the physical property, the commission may, in its discretion, deduct from gross additions to such physical property the amount charged to operating expenses for depreciation or, in lieu thereof, it may determine such net changes by deducting retirements from the gross additions: Provided, That the commission, in determining, the basis for temporary rates, may make such adjustments in the annual report data as may, in the judgment of the commission, be necessary and proper.

"(c) The commission may, in the manner hereinbefore set forth, fix, determine, and prescribe temporary rates every month, or at any other interval, if it be of opinion that the public interest so requires, and the existence of proceedings begun for the purpose of establishing final rates shall

not prevent the commission from changing every month, or at any other interval, such temporary rates as it has previously fixed, determined, and prescribed.

"(d) Whenever the commission, upon examination of any annual or other reports or of any papers, records, books, or documents, or of the property of any public utility, shall be of opinion that any rates of such public utility are producing a return in excess of a fair return upon the fair value of the property of such public utility, used and useful in its public service, the commission may, by order, prescribe for a trial period of at least six months, which trial period may be extended for one additional period of six months, such temporary rates to be observed by such public utility as, in the opinion of the commission, will produce a fair return upon such fair value, and the rates so prescribed shall become effective upon the date specified in the order of the commission. Such rates, so prescribed, shall become permanent at the end of such trial period, or extension thereof, unless at any time during such trial period, or extension thereof, the public utility involved shall complain to the commission that the rates so prescribed are unjust or unreasonable. Upon such complaint, the commission, after hearing, shall determine the issues involved, and pending final determination the rates so prescribed shall remain in effect.

"(e) Temporary rates so fixed, determined, and prescribed under this section shall be effective until the final determination of the rate proceeding, unless terminated sooner by the commission. In every proceeding in which temporary rates are fixed, determined, and prescribed under this section, the commission shall consider the effect of such rates in fixing, determining, and prescribing rates to be thereafter demanded or received by such public utility on final determination of the rate proceeding. If, upon final disposition of the issues involved in such proceeding, the rates as finally determined, are in excess of the rates prescribed in such temporary order, then such public utility shall be permitted to amortize and recover, by means of a temporary increase over and above the rates finally determined, such sum as shall represent the difference between the gross income obtained from the rates prescribed in such temporary order and the gross income which would

have been obtained under the rates finally determined if applied during the period such temporary order was in effect."

The above provisions of the Pennsylvania statute follow closely the temporary rate provisions of the recent New York state law. The New York act "authorizes," while the Pennsylvania Act "requires," the Commission to consider the effect of the temporary rates in fixing the permanent rates.

The question of the constitutionality of the temporary rate provisions of the New York statute was before the Court of Appeals of New York in the cases of Bronx Gas & Electric Co. v. Maltbie (Yonkers Electric Light & Power Co. v. Maltbie), 271 N.Y. 364, 3 N.E.(2d) 512, 515. That court, in the opinion filed July 8, 1936, held that the statute met all the requirements of the Constitution. The reasoning and conclusion in that case applies equally to the case now before this court.

Prior to the enactment of the statute considered in Bronx Gas & Electric Co. v. Maltbie, the validity of temporary rates under a previous New York statute was before the Supreme Court of the United States in Prendergast v. New York Tel. Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853. Those temporary rates were put into effect until final rates were fixed, but there was no provision for recoupment in case the temporary rates were too low. The Supreme Court accordingly held that the temporary rates, so long as they were in effect, were in reality final rates, and if they were confiscatory, the utility company would be deprived of a reasonable return upon its property during such period. Accordingly, so long as a temporary rate provided no means for recoupment, the temporary rate must satisfy the same requirements as a final rate, and must give a fair return upon all elements of capital value which must be considered in making a final rate. The purpose of a temporary rate is to force a public utility to give the consumers the benefit of reasonable rates pending the proceedings to fix a final rate. These rate proceedings often last for years, and meanwhile, if no temporary rates are fixed, the public is often required to pay unreasonable rates and the utilities are meanwhile permitted to make unreasonable profits. In making temporary rates where recoupment is provided for it may not be necessary for the Commission to consider all the elements of fair values

which must be considered in establishing final rates, but it must consider all the elements required by the statute, and such elements as will provide a fair return so as to avoid confiscation. Such elements of fair value as are considered in making temporary rates should be stated in the order fixing temporary rates.

It was the evident purpose of the Pennsylvania Legislature, in passing this act, to meet the criticism of the Prendergast Case, and to remove the burden placed upon the consuming public. The act provides that the temporary rate shall provide a return of not less than 5 per centum upon the original cost, less accrued depreciation, of the physical property of the public utility, used and useful in the public service. The Public Utility Commission may fix a temporary rate above the 5 per centum limitation, if the facts warrant; but they cannot go below 5 per centum even though a reasonable rate might be less than 5 per centum. This 5 per centum rate is not the standard set for the Public Utility Commission; it is the lowest limit which may be fixed. It is thus a safeguard for the benefit of the utility. While the method of fixing a temporary rate does not provide for all the elements of fair value that are necessary to be considered in fixing a final rate, it provides for one of the important elements. The result can be speedily attained and is not altogether based upon opinion and speculation.

The act requires the Public Utility Commission, in fixing the final rates, to consider the experience of the temporary rates, and if the final rates are in excess of the temporary rates, the public utility is permitted to recover the difference by temporary rate increases. If any temporary loss is suffered, the difference is made up to the utility in the final rates, and thus fair rates are secured, confiscation avoided, and the constitutional requirements met. This remedy of the utility against the consumers is no different than the remedy given to the consumers against the utility. If the one meets the constitutional requirements, so does the other. As was said in the case of Bronx Gas & Electric Co. v. Maltbie: "If the courts required the public utility company to put up a bond to pay back to the consumers the overcharges which it had exacted, pending a hearing, why was it not just as feasible and legal to turn the rem-edy about and provide that the consumers or the public should make good to the company the loss which it may have sustained in temporarily exacting too little? This is what our Legislature has done, and this we think is the meaning which we must give to its language, if it is to have any sense at all in the light of the past." The Court of Appeals further said: "True it is that all the consumers paying the final rate, including the take-up, may not be the same as those who paid the temporary rate. A few consumers may be new customers paying what the old consumer should have paid. Such instances are of minor importance; the percentage must be very small. We can never work our institutions of government if we refine matters to such an extent that we have to consider all these little details. The Constitution expresses fundamental principles, and if in the main these have been observed, this is all that can be required. Besides, when we speak of the consumer— the customer—we mean the public, not individuals. See San Diego Land & Town Co. v. Jasper, 189 U.S. 439, 23 S.Ct. 571, 47 L.Ed. 892."

The Court of Appeals of New York finally concluded: "We, therefore, are of the opinion that this law is not unconstitutional; that it meets the defects in prior procedure, and affords the company ample protection as well as the consumer. It is a fair attempt to meet the time element, which is necessary to be considered in rate-fixing hearings."

I agree with the reasons and conclusions of the New York State Court of Appeals, and I am of the opinion that the temporary rate provisions of the Pennsylvania Public Utility Law are constitutional and afford ample protection to the complainant.

Secondly, the validity of the order of July 27, 1937, fixing the temporary rates. The order does not state any element of fair value on which the temporary rates were fixed. A reviewing court is therefore unable to determine from the order whether any elements and if any what elements of fair value were considered, as required by the statute. Since the order of July 13, 1937, was rescinded, it is therefore of no effect and cannot now be considered by this court. I do not concur in granting a permanent injunction, but I would stay the collection of the temporary rates for a period of 15 days to afford the Commis-

sion an opportunity to state in its order of July 27, 1937, the elements of fair value on which the temporary rates were based.

WATSON, District Judge (concurring).

With the conclusion reached in the opinion of the court I am fully in accord, but I do not agree with the reasoning by which that conclusion is reached. In my opinion the Pennsylvania statute itself is not unconstitutional. That a state statute permitting a regulatory commission to fix temporary rates to be charged by a public utility is permissible so long as it does not result in confiscation has been recognized by the Supreme Court. Prendergast v. New York Telephone Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853; Public Service Commission of Wisconsin v. Wisconsin Telephone Co., 289 U.S. 67, 53 S.Ct. 514, 77 L.Ed. 1036. I agree with the reasoning in Yonkers Electric Light & Power Co. v. Maltbie, 271 N.Y. 364, 3 N.E.(2d) 512, 516, in which the Court of Appeals of New York found not to be unconstitutional the Public Service Law (Consol.Laws, c. 48) which contained similar provisions as to the fixing of temporary rates by the Public Service Commission of New York. In the Yonkers Electric Light & Power Co. Case the court said with reference to the Public Service Law: "It meets the defects in prior procedure, and affords the company ample protection as well as the consumer. It is a fair attempt to meet the time element, which is necessary to be considered in rate-fixing hearings."

The remaining question is whether the order of the Commission dated July 27, 1937, violates the Fourteenth Amendment to the Constitution.

The order of the Commission dated July 27, 1937, is the only order of the Commission before the court for consideration. A prior order and report dated July 13, 1937, were rescinded. The order dated July 27, 1937, directs the complainant to file a tariff affecting a reduction of approximately $435,000 in its annual gross revenues by the establishment of certain rates set forth in the order, which tariff the Commission found to be reasonable and proper for the purpose of temporary rates, and that is all. The Commission made its conclusion, but did not find any basic facts. It made no findings whatever from which it is possible for the court to determine whether one affected by such determination has been deprived of legal rights. Unaided by findings, this court is certainly not called upon to search the voluminous record to find a basis for the Commission's order, which might not be the basis, if any, upon which the Commission relied.

In Pennsylvania Power & Light Co. v. Public Service Commission (Pa.Super.) 193 A. 427, 437, the court said: "This is but a recognition of a fundamental principle that where the Legislature delegates powers to an extrajudicial tribunal appointed to determine property values or rights and the tribunal acts in such matters, it must make such findings that on a review by the court it is possible to determine whether one affected by such determination has been deprived of legal rights."

In Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U.S. 292, 57 S.Ct. 724, 729, 81 L.Ed. 1093, Mr. Justice Cardozo in the opinion of the court said:

"The fundamentals of a trial were denied to the appellant when rates previously collected were ordered to be refunded upon the strength of evidential facts not spread upon the record. * * *

"Upon the strength of these unknown documents refunds have been ordered for sums mounting into millions, the Commission reporting its conclusion, but not the underlying proofs. The putative debtor does not know the proofs today. This is not the fair hearing essential to due process. It is condemnation without trial. * * *

"From the standpoint of due process— the protection of the individual against arbitrary action—a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took judicial notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find them out.".

Clearly, it was the duty of the Commission to make findings of fact as to the basis upon which the rate reduction was ordered, and, not having done so, its action was arbitrary and violates the due process clause of the Fourteenth Amendment of the Federal Constitution.

In fixing temporary rates the Commission should, in my opinion, consider those elements which the Supreme Court has said must be considered in fixing a fair rate. Smyth v. Ames, 169 U.S. 466, 546,

18 S.Ct. 418, 42 L.Ed. 819; Des Moines Gas Co. v. Des Moines, 238 U.S. 153, 165, 35 S.Ct. 811, 59 L.Ed. 1244. These need not be considered with the same care, particularity, and thoroughness with which they must be considered in fixing final rates, but they must be considered to such an extent that confiscatory temporary rates will be avoided. In most cases, and certainly in this case, such a requirement will not place any extra burden upon the Commission and should not cause any unreasonable delay.

I express no opinion as to whether the rates set forth in the order of July 27, 1937, might be shown to be reasonable and proper, but, in my opinion, as the record now stands the only course open to this court is to enter a decree enjoining the Pennsylvania Public Utility Commission from enforcing its order of July 27, 1937.

DAVIS, Circuit Judge (dissenting in part).

This action concerns the lawfulness of a temporary rate for a public utility under authority of a state statute. The Edison Light & Power Company, a public utility corporation, is engaged in supplying electric energy in and about the city and county of York, Pa. The respondents are individuals, constituting the Pennsylvania Public Utility Commission, hereinafter referred to as the Commission. The complainant brought this suit in a statutory court, pursuant to section 266 of the Judicial Code (28 U.S.C.A. § 380) to enjoin the enforcement of an order of the Commission dated July 27, 1937, requiring the complainant to adopt temporary rates for its electric service in accordance with the provisions of section 310 (a) and (e) of the Public Utility Law of Pennsylvania which went into effect June 1, 1937 (66 P.S.Pa. § 1150 (a, e).

The order of July 27, 1937, is the Commission's second order imposing these temporary rates upon the company. The first one was dated July 13, 1937, but on account of a decision on July 15, 1937, of the superior court of Pennsylvania in the case of Pennsylvania Power & Light Company v. Public Service Commission, 193 A. 427, 437, that order was rescinded, is no longer in this case, and the one of July 27, 1937, was substituted.

The investigation to determine the reasonableness of the rates charged by the complainant was instituted on January 27, 1936, by the Pennsylvania Public Service Commission, predecessor of the respondent Commission. Many hearings were held by it; nearly a thousand pages of testimony was taken and volumes of exhibits were admitted in evidence. The case was closed on June 23, 1937.

The first order of July 13, 1937, reduced the gross operating revenue of the complainant company $435,000 a year. The second order of July 27, 1937, likewise reduced the annual gross operating revenue of the complainant by $435,000.

The order of the Commission was made pursuant to section 310 (a) and (e) of the Pennsylvania Act of June 1, 1937 (effective date). These subsections provide as follows:

"Section 310. Temporary Rates.—(a) The commission may, in any proceeding involving the rates of a public utility brought either upon its own motion or upon complaint, after reasonable notice and hearing, if it be of opinion that the public interest so requires, immediately fix, determine, and prescribe temporary rates to be charged by such public utility, pending the final determination of such rate proceeding. Such temporary rates, so fixed, determined, and prescribed, shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property (when first devoted to public use) of such public utility, used and useful in the public service, and if the duly verified reports of such public utility to the commission do not show such original cost, less accrued depreciation, of such property, the commission may estimate such cost less depreciation and fix, determine, and prescribe rates as hereinbefore provided."

"(e) Temporary rates so fixed, determined, and prescribed under this section shall be effective until the final determination of the rate proceeding, unless terminated sooner by the commission. In every proceeding in which temporary rates are fixed, determined, and prescribed under this section, the commission shall consider the effect of such rates in fixing, determining, and prescribing rates to be thereafter demanded or received by such public utility on final determination of the rate proceeding. If, upon final disposition of the issues involved in such proceeding, the rates as finally determined, are in excess of the rates prescribed in such

temporary order, then such public utility shall be permitted to amortize and recover, by means of a temporary increase over and above the rates finally determined, such sum as shall represent the difference between the gross income obtained from the rates prescribed in such temporary order and the gross income which would have been obtained under the rates finally determined if applied during the period such temporary order was in effect."

The complainant contends that these subsections violate the provisions of the Fourteenth Amendment to the Constitution of the United States.

But assuming these subsections to be constitutional, complainant says that the order made pursuant to them is unconstitutional, in that it is confiscatory because it "fixes, determines and prescribes" rates which do not yield a fair return on the fair value of its property devoted to public use.

It should be stated at the outset that this court is not a rate-making body. The function of fixing the rates of a public utility ultimately rests with the commonwealth. It has the right to control private corporations, whose business, necessarily monopolistic in character, is affected with a public interest. That control, where the fixing of rates is involved, is exercised through one of its agencies, the Public Utility Commission. In exercising this control, the rights of both the public and the corporation must be considered. The company is entitled to a fair return on a fair value of its property devoted to public use. It cannot be so high as to exceed the value of the service to the consumer and cannot be so low as to confiscate the property devoted to that service. Public Service Railway Co. v. Board of Public Utility Commissioners (D.C) 276 F. 979, 984. In other words, the company is entitled to ask a fair return upon the value of that which it employs for the public convenience, and the public is entitled to demand that no more be exacted from it than the services rendered are reasonably worth. Neither is entitled to anything more. Smyth v. Ames, 169 U.S. 466, 547, 18 S.Ct. 418, 42 L.Ed. 819; Philadelphia City Passenger Railway Co. v. Public Service Commission, 271 Pa. 39, 114 A. 642, 648.

We are concerned here solely with the allowance or disallowance of a permanent injunction, and the determination of that question depends upon whether or not the rates prescribed are confiscatory. Considered from one rate base they may be fair and reasonable and considered from another they may not be. The complainant, being entitled to a fair return on the fair value of all its property used in the service of the public, the question arises as to what property constituted the "basis" to which the commission applied a temporary rate of 6 per centum.

Section 310 (a) of the act (66 P.S.Pa. § 1150 (a) provided as to temporary rates that: "Such temporary rates, so fixed, determined, and prescribed, shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property (when first devoted to public use) of such public utility, used and useful in the public service."

It was the duty of the Commission to make such findings or to furnish such facts as would inform the court on a review as to whether or not those who had been affected by its determination had been deprived of their legal or constitutional rights. In the case of Pennsylvania Power & Light Co. v. Public Service Commission, supra, the court said: "This is but a recognition of a fundamental principle that where the Legislature delegates powers to an extrajudicial tribunal appointed to determine property values or rights and the tribunal acts in such matters, it must make such findings that on a review by the court it is possible to determine whether one affected by such determination has been deprived of legal rights."

In the case of Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U.S. 292, 300, 57 S.Ct. 724, 728, 81 L. Ed. 1093, the court laid down the law as follows:

"The fundamentals of a trial were denied to the appellant when rates previously collected were ordered to be refunded upon the strength of evidential facts not spread upon the record. * * *

"Upon the strength of these unknown documents refunds have been ordered for sums mounting into millions, the Commission reporting its conclusion, but not the underlying proofs. The putative debtor does not know the proofs today. This is not the fair hearing essential to due proc-

ess. It is condemnation without trial. * * *

"From the standpoint of due process—the protection of the individual against arbitrary action—a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took judicial notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find them out. * * *

"To put the problem more concretely: how was it possible for the appellate court to review the law and the facts and intelligently decide that the findings of the Commission were supported by the evidence when the evidence that it approved was unknown and unknowable?"

In the case of United Railways v. West, 280 U.S. 234, 250, 50 S.Ct. 123, 125, 74 L.Ed. 390, the court said: "What annual rate will constitute just compensation depends upon many circumstances, and must be determined by the exercise of a fair and enlightened judgment, having regard to all relevant facts." The same court, in the case of Smyth v. Ames, 169 U.S. 466, 546, 18 S.Ct. 418, 434, 42 L. Ed. 819, many years ago stated some of the "relevant facts" which must be considered in fixing a rate:

"And, in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case."

To these elements should be added "going concern value." In DesMoines Gas Co. v. DesMoines, 238 U.S. 153, 165, 35 S.Ct. 811, 815, 59 L.Ed. 1244, the court, in speaking of this value said: "This element of value is a property right, and should be considered in determining the value of the property, upon which the owner has a right to make a fair return when the same is privately owned although dedicated to public use. * * * Included in going value as usually reckoned is the investment necessary to organizing and establishing the business which is not em-

braced in the value of its actual physical property."

The Commission, however, took a rate base as set forth in paragraph 10 of its answer, of $5,900,000 which represents an allowance of $5,350,000 for reproduction cost new less accrued depreciation, plus $150,000 for working capital and $400,000 for going concern value. The operating revenue for 1936 was $2,020,044. From this the Commission deducted operating expenses of $880,400, retirement expenses of $120,422, and taxes of $218,000, leaving a net profit of $801,222. The Commission then on July 27, 1937, prescribed a temporary rate of 6.20 per cent. which will yield a return of $366,222, and produce a reduction in the annual revenue of the complainant of about $435,000.

But the Commission failed to deduct from the gross annual revenue $114,355 of other expenses, taxes, pay roll increases, pensions to employees, etc., which for the year 1936 would reduce the net return to $213,067. This represents a rate of 3.61 per cent. on the rate base of $5,900,000 used by the Commission, and for the year ended June 30, 1937, a return of $214,245, on a rate of 3.63 per cent. If other elements of capital value had been considered by the Commission which under the rules laid down by the Supreme Court it must do in fixing a rate base, both the return and rate would accordingly have been less. Such rates are clearly confiscatory. A rate of 7 per cent. was allowed by the Pennsylvania Public Service Commission in 1936. The complainant produced substantial proof to show that a reasonable rate for it is at least 7½ per cent.

Does the fact that the rates fixed are only temporary save the order from the inhibition of the constitution? We think it does not, and that this question is answered by the case of Prendergast v. New York Telephone Company, 262 U.S. 43, 49, 43 S.Ct. 466, 469, 67 L.Ed. 853, where the court said: "Nor did the fact that the orders of the Commission merely prescribed temporary rates to be effective until its final determination, deprive the Company of its right to relief at the hands of the court. The orders required the new reduced rates to be put into effect on a given date. They were final legislative acts as to the period during which they should remain in effect pending the final determination; and if the

rates prescribed were confiscatory the Company would be deprived of a reasonable return upon its property during such period, without remedy, unless their enforcement should be enjoined. Upon a showing that such reduced rates were confiscatory the Company was entitled to have their enforcement enjoined pending the continuance and completion of the rate-making process."

It has been argued that the recoupment provision of the Pennsylvania act avoids the infirmity in the New York act which the court pointed out in the Prendergast Case. This argument in effect means that it is proper and legal to violate the Constitution if at some future time that violation may be corrected wholly or in part. In other words, it is perfectly all right and permissible to take one's money by force if by and by it may be partly returned to him. If that is so, how long may the Constitution be violated during which time the injured party is without remedy? May it be for a month, as provided in section 310 (c) of the act (66 P.S.Pa. § 1150 (c), or for a trial period of 6 months or a year as provided in section 310 (d) of the act (66 P.S.Pa. § 1150 (d)? Such interpretation of the constitutional requirement is unsound.

Further, the provision for recoupment is not entirely effective. It does not provide for interest of the money, which the company loses during the trial period, while the final rates are being fixed, and if it did so require, considerable portions of the principal lost, might never be recovered. The act provided that if the final rates are higher than the temporary rates, "then such public utility shall be permitted to amortize and recover, by means of a temporary increase over and above the rates finally determined" (section 310 (e) of the act, 66 P.S.Pa. § 1150 (e) the sum lost on account of the temporary rates. But if the consumer discontinues the service or move out of the territory, as doubtless in a shifting population will be frequently done, the utility in many cases will be absolutely without remedy for section 305 of the act (66 P.S.Pa. § 1145) abolishes "deposits to secure future payments."

The Commission relies almost entirely upon the case of the Bronx Gas & Electric Co. v. Maltbie, 271 N.Y. 364, 3 N.E. (2d) 512, 513, to escape the rule laid down in the Prendergast Case. In the Bronx Gas Case the court said that "the sole question for this court to determine is whether the Public Service Commission can legally provide a temporary rate for electric service, pending the determination of the final rate." Of course, it can if it considers those elements which the Supreme Court has always said are necessary in order to form a proper rate base and makes an order that is not confiscatory. The court further said that if this were done it would prevent the fixing of a temporary rate for it would be a final rate. This does not follow. The elements, which the Supreme Court in numerous cases has said must be considered in fixing a fair rate, need not be considered with the same care, particularity, and thoroughness with which they must be considered in fixing a final rate, but they must be considered to the extent that will enable the Commission to avoid fixing a confiscatory, temporary rate, for neither the Constitution nor the Supreme Court has made any exception in fixing a confiscatory rate because the rate is temporary. In the Bronx Gas Case, the New York court said that the Prendergast Case decided several things, one of which was that: "The temporary rate must give a fair return upon all those elements of capital value which must be considered in fixing the final rate." That is exactly what we understand the case to have decided and that required the Commission in the case at bar in fixing the temporary rate to consider the necessary elements of capital value other than original cost less accrued depreciation sufficiently to avoid fixing a confiscatory temporary rate. The decision in the Bronx Case in effect differs with the law declared in the Prendergast Case.

In the case of Laclede Gas Light Co. v. Missouri Public Service Comm. (D.C.) 8 F.Supp. 806, 809, the court said: "It is earnestly urged by defendants and intervenor that the Commission's order should be permitted to go into effect because it is intended only to be temporary. But, as we have pointed out, the order itself is not so limited. Moreover, the constitutional prohibition against the taking of property without due process of law contains no exception permitting a taking of some property or a taking during a limited period of time."

Speaking for myself alone, it seems to me that section 310 (a) and (e) of the act are unconstitutional because they permit the commission to fix and maintain rates as

low as 5 per cent. upon the original cost, less accrued depreciation, without considering other elements of capital value which the Supreme Court has often said must be done in fixing a fair rate on a fair value of property used and useful in the public service. The test of the constitutionality of an act is not what a rate-making body does under it, but what it is permitted to do.

Under section 310 (c) of the Act the Commission is authorized to fix temporary rates "every month or at any other interval" and it may in this case at any time give attention to other elements of capital value than original cost less depreciation and fix a legal rate.

And now, to wit, October 15, 1937, the Pennsylvania Public Utility Commission is hereby enjoined and restrained from in any manner enforcing or attempting to enforce its order of July 27, 1937, establishing the rates set forth therein.