**EDISON LIGHT & POWER CO. v.
DRISCOLL et al.**
No. 9893.

District Court, E. D. Pennsylvania.

Oct. 10, 1938.

Walter Biddle Saul and Edward A. G. Porter, both of Philadelphia, Pa., Clarence W. Miles, of Baltimore, Md., Edward F. Huber, of New York City, J. Harry La-

Brum, of Philadelphia, Pa., and Morgan S. Kaufman, of Scranton, Pa., for plaintiff.

Herbert S. Levy, of Lancaster, Pa., and Samuel G. Miller and Edward Knuff, both of Harrisburg, Pa., for respondents.

Clarence M. Lawyer, Jr., and Herbert B. Cohen, of York, Pa., for interveners.

Before BUFFINGTON and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

This was a suit in equity brought by the Edison Light & Power Company, hereinafter called the company, to restrain the respondents, The Pennsylvania Public Utility Commission, hereinafter called the commission, and the persons composing the commission individually, from enforcing its "temporary rate" order of November 30, 1937, directing the company to file a tariff supplement effecting a reduction of approximately $435,000 in its annual gross revenue.

It should be stated at the outset that this court is not a rate-making body. The function of fixing the rates of a public utility belongs to the Commonwealth. It has the right to control private corporations, whose business, necessarily monopolistic in character, is affected with a public interest. That control, where the fixing of rates is involved, is exercised through one of its agencies, the Public Utility Commission. In exercising this control, the rights of both the public and the corporation must be considered. The company is entitled to a fair return on a fair value of its property devoted to the public service. The return can not be so high as to exceed the value of the service to the consumer and can not be so low as to confiscate the property devoted to that service. In other words the company is entitled to ask a fair return upon the value of the property which it employs for the public convenience and the public is entitled to demand that no more be exacted from it than the services rendered are reasonably worth. Neither is entitled to anything more than these reciprocal rights.

The order in this case was made by the commission pursuant to section 310(a) of the Public Utility Act of Pennsylvania of May 28, 1937, 66 P.S.Pa. § 1150(a), which provides as follows: "Temporary rates. (a) The commission may, in any proceeding involving the rates of a public utility

brought either upon its own motion or upon complaint, after reasonable notice and hearing, if it be of opinion that the public interest so requires, immediately fix, determine, and prescribe temporary rates to be charged by such public utility, pending the final determination of such rate proceeding. Such temporary rates, so fixed, determined, and prescribed, shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property (when first devoted to public use) of such public utility, used and useful in the public service, and if the duly verified reports of such public utility to the commission do not show such original cost, less accrued depreciation, of such property, the commission may estimate such cost less depreciation and fix, determine, and prescribe rates as hereinbefore provided."

The company, feeling aggrieved by the order, made application for a statutory court pursuant to the provisions of section 266 of the Judicial Code, 28 U.S.C.A. § 380. An order convening such court was signed on December 14, 1937 and on the same day a preliminary restraining order was entered against the commission upon the entry of a bond by the company for $75,000. The motion for an interlocutory injunction came on for hearing on January 17, 1938. At the conclusion of the hearing, the restraining order was continued upon the filing of a bond by the complainant for $150,000. It was agreed between the parties that the matter be treated as an application for a permanent injunction.

The company contends that this section 310(a) is unconstitutional for the reason that it permits the commission to fix a temporary rate of only 5 per cent. of the original cost, less accrued depreciation of the physical property (when first devoted to public use) of the utility, thus basing the rate upon only one element of the utility's property instead of upon all of its property as the decisions of the Supreme Court require.

The Supreme Court in the leading case of Smyth v. Ames, 169 U.S. 466, 547, 18 S.Ct. 418, 434, 42 L.Ed. 819, said the following elements must be considered in finding the fair value of the property of a public utility, devoted to the public use: "And, in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case."

From the time of that decision until the present the Supreme Court in case after case has declared that these elements must be considered by rate-making bodies in fixing a fair return on the fair value of the property of a utility devoted to the public service. Des Moines Gas Company v. City of Des Moines, 238 U.S. 153, 35 S.Ct. 811, 59 L.Ed. 1244; Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Commission of Missouri et al., 262 U.S. 276, 43 S.Ct. 544, 67 L.Ed. 981, 31 A.L.R. 807; St. Louis & O'Fallon Railway Co. et al. v. United States et al., 279 U.S. 461, 49 S.Ct. 384, 73 L.Ed. 798; United Railways & Electric Co. v. West, 280 U.S. 234, 50 S.Ct. 123, 74 L.Ed. 390; Los Angeles Gas & Electric Corporation v. Railroad Commission, 289 U.S. 287, 53 S.Ct. 637, 77 L.Ed. 1180; Dayton Power & Light Co. v. Public Utilities Commission of Ohio, 292 U.S. 290, 54 S.Ct. 647, 78 L.Ed. 1267; Columbus Gas & Fuel Co. v. Public Utilities Commission of Ohio, 292 U.S. 398, 54 S.Ct. 763, 78 L.Ed. 1327, 91 A.L.R. 1403; West v. Chesapeake & Potomac Telephone Co., 295 U.S. 662, 55 S.Ct. 894, 79 L.Ed. 1640. The law of Pennsylvania is to the same effect. Bangor Water Co. v. Public Service Commission, 82 Pa.Super. 48; City of Erie et al. v. Public Service Commission, 278 Pa. 512, 123 A. 471. From the nature of the case, these elements, being property rights, must be considered in finding the present fair value of property. For instance, when we consider the constant increase or decrease in the cost of material and labor, the amount spent in permanent improvements, allowance for overheads, working capital, going concern value (which alone the company says is $400,000 in this case) the present fair value of property may be very different from the original cost less accrued depreciation. A rate based upon this one element alone as provided in the Act, must, in many, if not all instances, be confiscatory.

The commission seeks to avoid this inevitable conclusion and the constitutional infirmities of the Act by saying that it

does not limit the commission in finding fair value to the consideration of the one element of original cost. It argues that because it "may" not "must", consider the one element only, the constitutionality of the Act is saved. In other words, it contends that the test of the constitutionality of an Act depends upon the *exercise,* and not upon the *grant* of power. The constitutionality of an Act, it says, depends upon what *is* done, and not upon what *may be,* done under it. If this contention be true, the constitutionality of an act depends upon the will of men and not upon a rule of law. The mere statement of this contention shows its infirmity. People v. C. Klinck Packing Co., 214 N.Y. 121, 108 N. E. 278, Am.Cas.1916D, 1051.

Nor is the constitutionality of the Act saved by the provision in section 310 (e), 66 P.S.Pa. § 1150(e) which provides that: "If, upon final disposition of the issues involved in such proceeding, the rates as finally determined, are in excess of the rates prescribed in such temporary order, then such public utility shall be permitted to amortize and recover, by means of a temporary increase over and above the rates finally determined, such sum as shall represent the difference between the gross income obtained from the rates prescribed in such temporary order and the gross income which would have been obtained under the rates finally determined if applied during the period such temporary order was in effect."

When this question, in the case of Edison Light & Power Company v. Driscoll, D.C., 21 F.Supp. 1, was considered in the Middle District of Pennsylvania, the court said [page 8]:

"Does the fact that the rates fixed are only temporary save the order from the inhibition of the constitution? We think it does not, and that this question is answered by the case of Prendergast v. New York Telephone Company, 262 U.S. 43, 49, 43 S.Ct. 466, 469, 67 L.Ed. 853, where the court said: 'Nor did the fact that the orders of the Commission merely prescribed temporary rates to be effective until its final determination, deprive the Company of its right to relief at the hands of the court. The orders required the new reduced rates to be put into effect on a given date. They were final legislative acts as to the period during which they should remain in effect pending the final determination; and if the rates prescribed were confiscatory the Company would be deprived of a reasonable return upon its property during such period, without remedy, unless their enforcement should be enjoined. Upon a showing that such reduced rates were confiscatory the Company was entitled to have their enforcement enjoined pending the continuance and completion of the rate-making process.'

"It has been argued that the recoupment provision of the Pennsylvania act avoids the infirmity in the New York act which the court pointed out in the Prendergast Case. This argument in effect means that it is proper and legal to violate the Constitution if at some future time that violation may be corrected wholly or in part. In other words, it is perfectly all right and permissible to take one's money by force if by and by it may be partly returned to him. If that is so, how long may the Constitution be violated during which time the injured party is without remedy? May it be for a month, as provided in section 310(c) of the act (66 P.S.Pa. § 1130(c), or for a trial period of six months or a year as provided in section 310(d) of the act (66 P.S. Pa. § 1150(d)? Such interpretation of the constitutional requirement is unsound.

"Further, the provision for recoupment is not entirely effective. It does not provide for interest of the money, which the company loses during the trial period, while the final rates are being fixed, and if it did so require, considerable portions of the principal lost, might never be recovered. The act provided that if the final rates are higher than the temporary rates, 'then such public utility shall be permitted to amortize and recover, by means of a temporary increase over and above the rates finally determined' (section 310 (e) of the act, 66 P.S.Pa. § 1150(e) the sum lost on account of the temporary rates. But if the consumer discontinues the service or move out of the territory, as doubtless in a shifting population will be frequently done, the utility in many cases will be absolutely without remedy for section 305 of the act (66 P.S.Pa. § 1145) abolishes 'deposits to secure future payments.'"

What was said there is applicable here and the provision in subsection 310(e) does not save the constitutionality of this section.

We think that section 310(a) of the Act is unconstitutional and what was done pursuant to it is invalid.

If, however, we are in error about this and the section is constitutional, we think

that the order is invalid for the reason that it is confiscatory.

The final report of the commission and the briefs of the parties contain many analyses and a mass of figures which it is difficult for one not a certified public accountant or technical engineer to understand. Some of the figures may be unimportant, but others are important. The commission found that the rate base or fair value of the company's property for the purpose of prescribing temporary rates is $5,250,-000. Another important fact is that the operating revenue received by the company for the year ended September 30, 1937, was $2,202,329. In order to determine the net profit, the expenses incurred in operation, the taxes as adjusted and the amount the commission ordered to be deducted from the revenue must be subtracted from this sum. According to the commission these items aggregate $1,817.829, which subtracted from $2,202,329 leaves a net profit of $384,500. But the company contends that in addition to the items allowed by the commission, the following allowances should be made: $178,375, rate case expenses; $20,593 increased salary expenses to officers and employees as provided by its board of directors; $15,089 realized by the company on sale of electric energy to York Railways Company which was included in the operating revenue. According to the contention of the company, therefore, the expenses etc. which should have been allowed amount to $2,010,680, which subtracted from the income leaves a net profit of $191,649. Should these additional expenses be allowed?

 As to the rate case expense of $178,375, the suit was started by the commission which required the company to produce much of the evidence necessitating the expense for which allowance is sought. There is no contention that the expense was unreasonable or in any manner inflated. The commission disallowed this expense on the ground, in part, at least, that the company in the past received excessive rates, but this position is untenable, Board of Public Utility Commissioners v. New York Telephone Co., 271 U.S. 23, 31, 46 S.Ct. 363, 70 L.Ed. 808, and on the further ground that part of the expense was incurred under the Public Service Company law, 66 P.S.Pa. § 1 et seq., which was superseded by the Public Utility Act, effective June 1, 1937, 66 P.S.Pa. § 1101 et seq. The former law included no provision for assessment of the costs of investigation or general regulatory expenses against public utilities. The evidence produced under the predecessor of the Pennsylvania Public Utility Commission was used by the latter. In any event the company did not ask the allowance of the expense on the ground that the commission has the right to assess the costs, but on the ground that it was a reasonable expense honestly and necessarily incurred, actually paid and, therefore, ought to be allowed in fixing a fair return. It is the policy of the courts to allow rate case expenses if the complaint of the utility is not unfounded and if the cost of the proceedings have not been swollen by untenable objections. In determining what the rate of return on the property of a utility shall be, "the commission must give heed to all legitimate expenses that will be charges upon income during the term of regulation, and in such a reckoning the expenses of the controversy engendered by the ordinance must have a place like any others". In speaking of the allowance of expenses of the rate litigation, the Supreme Court further said: "We think they must be included among the costs of operation in the computation of a fair return." West Ohio Gas Co. v. Public Utilities Commission, 294 U.S. 63, 73, 74, 55 S.Ct. 316, 321, 322, 79 L.Ed. 761.

 Increased salary expenses required to be paid by the company to its officers and employees pursuant to a resolution by its board of directors, if reasonable, should be allowed. The evidence does not show these increases to be unreasonable or exorbitant. A commission may regulate but not manage a utility. It "is not empowered to substitute its judgment for that of the directors of the corporation". Missouri ex rel. Southwestern Bell Telephone Co. v. Public Service Commission, 262 U.S. 276, 289, 43 S.Ct. 544, 547, 67 L.Ed. 981, 31 A.L.R. 807.

 We think that the loss of $20,593 included in the revenue to the company on the sale of energy to the York Railway Company at and upon the abandonment of that company should have been allowed by the commission. As we understand it the abandonment is certain and is not denied.

The other item in dispute grows out of the adjustment of taxes because of the reduction in revenue of $435,000 ordered by the commission. The original amount of taxes paid by the company was $333,649 and the commission allowed a reduction of $127,249 leaving a balance of $206,400 to

be paid by the company. The company, on the other hand, says that $148,455 should have been allowed, leaving a balance of $185,194 to be paid. It is not clear just how this difference of $21,206 between them arose, but it does not have a decisive bearing on the case, for the reason that if the contention of the company is correct, it decreases the expense, increases the profit and the rate of return.

If these allowances are made, as we think they should be, the return, as above stated, on the fair value of $5,250,000 found by the commission is 3.65%. If $5,-866,081 is taken as the rate base, the return allowed is 3.27%. Either, under the facts of this case, is confiscatory.

The commission, however, says that if the rate case expense is allowed and amortized over a period of five years, the profit of operation would be greater and the return would not be confiscatory. But however that might be, it was not allowed in any form, for a single year or amortized, and we must pronounce upon the order as made.

It follows that the company is entitled to a permanent injunction restraining the commission from enforcing the temporary rates prescribed in accordance with the prayer of the bill.